# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00630-CV

**State of Texas, Texas Health and Human Services Commission, and Texas Building and Procurement Commission, Appellants**

**v.**

**1165 Airport Boulevard Office Building, LTD. of Travis County, Texas U.S.A., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. GN501591, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## O P I N I O N

In this interlocutory appeal, the State of Texas, the Texas Health and Human Services Commission, and the Texas Building and Procurement Commission contend that the district court erred in denying their plea to the jurisdiction.[1]  *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2005) ("A person may appeal from an interlocutory order of a district court . . . that . . . grants or denies a plea to the jurisdiction by a governmental unit.").  Appellee 1165 Airport Boulevard Office Building, LTD. ("Airport Boulevard") leased office space to the Human Services Commission.  Shortly after the State agreed to a new lease extension, a dispute arose over liability for utilities and the correct formula for calculating the annual increase in rent.  Airport Boulevard sued in district court, asking the court to declare what the terms of the lease required and to

---

[1] We refer to these entities collectively as "the State."

invalidate a warrant hold issued by the comptroller of public accounts that had stopped all rental payments to Airport Boulevard. *See* Tex. Gov't Code Ann. § 403.055 (West 2005) (requiring comptroller to place hold on all payments due to individuals that have been reported by state agencies as indebted to State). The State filed a plea to the jurisdiction, asserting that Airport Boulevard's claims were barred by sovereign immunity. The district court denied the plea, and the State appealed.

Because Airport Boulevard's direct request for a reformation of the lease seeks to impose liability on the State and to control State action, it is a suit against the State that is barred by sovereign immunity. Therefore, we reverse the district court's denial of the plea to the jurisdiction and dismiss as to those issues. However, because Airport Boulevard is entitled to a declaration of its rights regarding the propriety of the Procurement Commission's actions under government code section 403.055, we affirm the district court's denial of the plea to the jurisdiction as to that issue.

## BACKGROUND

Airport Boulevard has rented office space to the Human Services Commission since the 1990s. In June of 2002, Airport Boulevard and the Human Services Commission negotiated a new five-year lease agreement scheduled to take effect in September 2002. The Procurement Commission prepared the written lease agreement and delivered it to Airport Boulevard on July 30,

2002.[2] Airport Boulevard signed the contract and sent it back with the Procurement Commission's waiting courier.[3]

According to Airport Boulevard's first amended original petition, the executed lease agreement has terms differing from those of the original oral agreement. Airport Boulevard insists that the oral agreement stipulated that the Human Services Commission would pay utilities under the new lease and that the annual rental increase would be 25 percent of the Consumer Price Index ("CPI"). Airport Boulevard points out that the State was responsible for utilities under their previous lease agreements and there had been no discussion about changing this responsibility under the new lease. Nevertheless, the written agreement stated that Airport Boulevard was to pay the utilities, unless the State elected otherwise. The State's election would affect the annual rental increase: If the State elected to pay utilities, the annual rental increase would be only 25 percent of the CPI, but if Airport Boulevard paid them, the annual rental increase would be 40 percent of the CPI.

According to Airport Boulevard, the State paid the utilities during the first year of the new lease, as it had under previous lease agreements. Airport Boulevard sent the Human Services Commission a notice in August 2003 stating that the rent would increase by 25 percent of the CPI for the second year of the lease, beginning September 1. When the State did not adjust its rent payment for September 2003, Airport Boulevard sent another letter reminding the State of the increase. When the State refused to pay the adjusted amount again in October 2003, Airport

---

[2] In 2001, the legislature created the Texas Building and Procurement Commission to "lease space for the use of a state agency on the basis of obtaining the best value for the state." Tex. Gov't. Code Ann. § 2167.0021 (West Supp. 2005).

[3] While the written agreement is not included in the record, Airport Boulevard describes some of the terms in its petition and appellate brief.

3

Boulevard sent a third letter concerning the increase. According to Airport Boulevard's petition, the State sent a lease amendment recalculating the rental increase to approximately 40 percent of CPI rather than 25 percent. On October 22, 2003, the State sent notice to Airport Boulevard that it was exercising its election to forego paying utilities and requested that the utilities be changed from the State's name to Airport Boulevard's name.[4] Airport Boulevard did not do so, and the State continued to pay the utilities for almost another year.

On September 13, 2004, the Procurement Commission notified Airport Boulevard that it considered the lease in default and demanded $65,000 as reimbursement for the prior two years' utility payments. Airport Boulevard did not comply with this request, and on March 31, 2005, the Procurement Commission sent a letter demanding Airport Boulevard pay the sum of $95,071.57, representing the State's utility payments from the commencement of the contract in September 2002 through March 2005. According to Airport Boulevard, the Procurement Commission also advised in this letter that it would report Airport Boulevard to the comptroller of public accounts as a "person who is indebted to the state or has a tax delinquency." The Procurement Commission's report that Airport Boulevard was indebted to the State resulted in a warrant hold—the comptroller was prohibited from paying Airport Boulevard any further rental payments under the lease, even though the Health and Human Services Commission continued to occupy the premises. *See generally id*.

On May 2, 2005, Airport Boulevard filed this declaratory judgment action in district court. In its first amended original petition, Airport Boulevard requested that the court (1) construe

---

[4] The State apparently calculated that it would save money by electing not to pay the utilities and agreeing to pay rent increased by 40 percent of CPI, rather than paying utilities and a rent increase of 25 percent of the CPI. Uncertainty concerning this calculation may be what prompted the State to make the rental payments without *any* rental increase during the months of September and October of 2003.

4

the lease in accordance with the oral agreement as Airport Boulevard described it, declare that the State was responsible for utilities, and calculate the annual rental increase to be 25 percent of the CPI; (2) declare that the State had elected to pay utilities during the first year and could not rescind that election mid-way through the lease; and (3) declare that the Procurement Commission's reporting of Airport Boulevard to the comptroller as a person indebted to the state was invalid. The State answered by filing a plea to the jurisdiction, stating that declaratory judgment actions seeking to impose contractual liabilities or enforce performance of a contract are suits against the state and, therefore, barred by the doctrine of sovereign immunity. *See Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855-56 (Tex. 2002). After a hearing on September 14, 2005, the district court issued an order denying the State's plea to the jurisdiction. This interlocutory appeal followed.

## STANDARD OF REVIEW

### Plea to the Jurisdiction

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a court has subject matter jurisdiction is a question of law. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *IT-Davy*, 74 S.W.3d at 855. Whether a party has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction and whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction are also questions of law reviewed *de novo*. *Miranda*, 133 S.W.3d at 226. However, in some cases, disputed evidence of jurisdictional facts that also implicate the merits of

5

the case may require resolution by the finder of fact. *Id*. (citing *Gates v. Pitts*, 291 S.W. 948, 949 (Tex. Civ. App.—Amarillo 1927, no writ)).

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id*. (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id*. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id*. at 226-27 (citing *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002)). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id*. at 227.

**Sovereign Immunity**

The bar of sovereign immunity is a creature of common law and not of any legislative enactment. *Texas A & M Univ.-Kingsville v. Lawson*, 87 S.W.3d 518, 520 (Tex. 2002). Sovereign immunity protects the State, its agencies, and its officials from lawsuits for damages absent legislative consent. *Federal Sign v. Texas. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). Sovereign immunity refers to the State's two-fold immunity from suit and liability. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). Immunity from suit bars a suit against the State unless the legislature expressly consents to the suit. *IT-Davy*, 74 S.W.3d at 853. If the legislature has not expressly waived immunity from suit, the State retains immunity even if its

liability is not disputed. *Federal Sign*, 951 S.W.2d at 405. Immunity from liability protects the State from money judgments even if the legislature has expressly given consent to sue. *IT-Davy*, 74 S.W.3d at 853.

When the State contracts with a private party, it waives immunity from liability but not immunity from suit. *Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 705 (Tex. 2003). Express consent is required to show that immunity from a breach of contract suit has been waived. *Travis County v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 248 (Tex. 2002). Legislative consent for suit or any other sovereign immunity waiver must be "effected by clear and unambiguous language." Tex. Gov't Code Ann. § 311.034 (West Supp. 2005); *Pelzel*, 77 S.W.3d at 248; *Federal Sign*, 951 S.W.2d at 405. When determining whether there is a clear and unambiguous waiver of immunity from suit, we generally resolve any ambiguity in favor of retaining immunity. *Wichita Falls State Hosp.*, 106 S.W.3d at 697.

**Declaratory Judgment**

The Uniform Declaratory Judgment Act is a remedial statute designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Tex. Civ. Prac. & Rem.Code Ann. § 37.002(b) (West 1997); *IT-Davy*, 74 S.W.3d at 855. The Declaratory Judgment Act provides:

A person interested under a deed, will, written contract, or other writings constituting

a contract or whose rights, status, or other legal relations are affected by a statute,

municipal ordinance, contract, or franchise may have determined any question of

7

construction or validity arising under the instrument, statute, ordinance, contract, or

franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 1997). A litigant's request for declaratory relief does not change the underlying nature of a suit or confer jurisdiction on a court. *IT-Davy*, 74 S.W.3d at 855.

As the supreme court has explained, private parties may seek declaratory relief against state officials who allegedly act without legal authority. *See id.*; *W.D. Haden Co. v. Dodgen*, 308 S.W.2d 838, 840 (Tex. 1958); *Cobb v. Harrington*, 190 S.W.2d 709, 712 (Tex. 1945). Such suits are not considered "suits against the State" because an attempt to compel a state officer to act within her official capacity does not subject the State to liability. *IT-Davy*, 74 S.W.3d at 855. Thus, these declaratory judgment actions do not implicate sovereign immunity. *Id*.

On the other hand, declaratory suits against a state official seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State. *Id*. Because they seek to control state action or impose liability on the State, such suits may not be maintained without legislative permission. *Id*. at 856.

As we shall explain, Airport Boulevard has sought both types of declaratory relief in the same lawsuit. The attempt to reform, interpret or enforce a contract is a suit against the State that implicates sovereign immunity and requires legislative permission. *Id*. at 855-56. The claim that state officials exceeded their statutory authority in imposing the warrant hold is not a suit against the State and thus is not barred by sovereign immunity. *Id*. at 855.

8

## DISCUSSION

The State contends that the doctrine of sovereign immunity deprives the district court of subject-matter jurisdiction to hear Airport Boulevard's suit because it is a suit against the State and there has been no showing of legislative permission. *See id*. at 855-56.

In order to ascertain whether the district court has jurisdiction to hear this case, we must determine whether Airport Boulevard's pleadings affirmatively establish the district court's jurisdiction. *Miranda,* 133 S.W.3d at 226. In its first amended original petition, Airport Boulevard stated:

15. The parties dispute whether the document that the State prepared accurately reflects the lease agreement between them. If Plaintiff did in fact execute the document the State claims memorializes the lease agreement such document was executed as the result of mutual mistake or accident on the part of Plaintiff. Plaintiff asks the Court to declare the lease agreement between the parties provides that the State shall pay all of the utilities and that the rent shall increase annually at a rate of twenty-five percent (25%) of the CPI. Additionally, ancillary to this declaration, Plaintiff asks the Court to reform the document to reflect the agreement negotiated between HHSC and Plaintiff; more particularly that the State shall pay rent of $21,700.00 per month with an annual increase at rate of twenty-five percent (25%) of the CPI, and the State to pay for all utilities.

16. Alternatively, as noted above, the document that BPC proffers is ambiguous about the State's election to pay utilities and its effect upon the CPI escalation clause. Because the State elected to pay utilities as evidenced by its conduct during the first fourteen (14) months of the lease, the proper amount of the CPI adjustment is a twenty-five percent (25%) increase. The State is bound by the terms of its election for the duration of the lease. After having elected to pay utilities for the first two (2) months of the second (2nd) year of the lease, the State purported to reverse its election, unilaterally amend the lease agreement, and require Plaintiff to pay utilities. Further, the State refused to be bound by it's own election in future years. Plaintiff asks the Court to declare that Plaintiff's interpretation of the ambiguous terms of the lease is the correct interpretation.

9

17. Plaintiff also seeks to declare void BPC's report to the Comptroller to the effect that Plaintiff was indebted to the State. BPC violated section 403.055(g) of the Texas Government Code when it failed to provide Plaintiff with any opportunity to exercise any due process or other constitutional or statutory protection before it began the collection procedure. Thus, the report of the indebtedness or delinquency was prohibited by Subsection (g) of section 403.055 or was otherwise erroneous.

Although Airport Boulevard claims that it seeks only to establish its own liability under the contract and not the liability of the State, its pleadings indicate otherwise. In paragraph 15, Airport Boulevard asks the court to determine that the written contract does not represent the agreement between the parties and that the actual terms of the agreement require the State to pay utilities. Airport Boulevard then asks the district court to reform the lease to reflect what the parties had actually agreed upon. If the court refuses to disregard the written agreement, Airport Boulevard asks the court in paragraph 16 to declare ambiguous portions of the lease pertaining to the calculation of the annual rental increase and to construe the terms in accord with Airport Boulevard's interpretation of the lease. Since the State paid for the utilities during the first year, Airport Boulevard asks the court to make that election binding for the entire term of the extended contract. Airport Boulevard's explicit request for the interpretation and reformation of significant contract terms implicates the contractual liabilities of the State; therefore, it seeks to control State action. Airport Boulevard's request for declaratory relief does not change this fact, nor does it confer jurisdiction on the district court. *See IT-Davy,* 74 S.W.3d at 855. Because the declarations sought in paragraphs 15 and 16 constitute suits against the State, they cannot be pursued in a declaratory judgment action absent

legislative consent. *See id.* at 855-56; *Smith v. Lutz*, 149 S.W.3d 752, 759-60 (Tex. App.—Austin, 2004, no pet.).[5]

However, in paragraph 17, Airport Boulevard "seeks to declare void the Procurement Commission's report to the Comptroller to the effect that Plaintiff was indebted to the State." Government code section 403.055 requires that "a state agency shall report to the comptroller each person who is indebted to the state or has a tax delinquency" and that "the comptroller, as a ministerial duty, may not issue a warrant or initiate an electronic funds transfer to a person who has been reported properly" under the statute. Tex. Gov't Code Ann. § 403.055(a), (f). Construing the pleading liberally in Airport Boulevard's favor and focusing on its intent, Airport Boulevard sought to challenge the application of section 403.055's warrant hold provision by contesting its status as a person indebted to the State. *Id.* § 403.055(a); *see Miranda,* 133 S.W.3d at 226 (holding that pleadings should be construed in favor of plaintiff and courts should look to pleader's intent). The Declaratory Judgment Act provides that any person whose rights are being affected by a statute has the right to obtain a declaration of his rights and status under that statute or to have determined any other question of construction or validity arising under the statute. Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a); *IT-Davy,* 74 S.W.3d at 859-60 (stating that Declaratory Judgments Act expressly allows persons to challenge statutes). Therefore, we hold that the district court has jurisdiction to construe government code section 403.055 to determine the validity of the warrant hold resulting

---

[5] Moreover, even if the district court could determine Airport Boulevard's duties without subjecting the State to liability, a declaratory judgment action is not the appropriate mechanism for contract reformation or modification. *Jackson v. Houston Indep. Sch. Dist.*, 994 S.W.2d 396, 403 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

11

from the Procurement Commission's report to the comptroller that Airport Boulevard is indebted to the State.[6] *Id.*

**CONCLUSION**

Airport Boulevard's direct requests for an interpretation of contract terms and a reformation of the lease seek to impose liability on the State and control the State's actions. We therefore reverse the district court's denial of the plea to the jurisdiction and dismiss these portions of the suit. However, the Declaratory Judgment Act entitles Airport Boulevard to a declaration of whether the Procurement Commission's report of it as a person indebted to the State pursuant to government code section 403.055 was valid. Thus, we affirm the district court's denial of the plea to the jurisdiction as it pertains to that issue.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Patterson and Puryear

Affirmed in Part; Reversed and Dismissed in Part

Filed: August 11, 2006

_____

[6] Airport Boulevard also asserts that the Procurement Commission's report to the comptroller was void on due process grounds. Section 403.055(g) of the government code requires that before reporting a debtor the agency must first provide it with the opportunity to exercise the same due process or other protections required when the agency begins a collection procedure. *See* Tex. Gov't Code Ann. § 403.055(g) (West 2005). Airport Boulevard argues that, because it was not given an opportunity to contest the debt, the report to the comptroller violated due process. We need not address the due process claim for jurisdictional purposes because we conclude that the Declaratory Judgment Act provided the district court with jurisdiction to determine whether Airport Boulevard is a person indebted to the State pursuant to the warrant-hold statute.