# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00003-CV

**Robert Scott, Commissioner of Education, Appellant**

**v.**

**Alphonso Crutch Life Support Center, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. GN503667, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order denying the Commissioner of Education's[1] plea to the jurisdiction. Alphonso Crutch Life Support Center (the "School"), a charter school, filed suit against the Commissioner to challenge the decision by the Texas Education Agency (TEA) to withhold state funds from the School to recover an overallocation of funds received by the charter school due to alleged errors in its reporting of average daily attendance. The School sought a declaration that the Commissioner's actions violated state law, or alternatively, that the applicable statutes are unconstitutional and violate the school's due process rights by failing to provide a hearing before the TEA to challenge the decision on overallocation. The School also sought a declaration that

---

[1] At the time of the district court's proceedings, the Hon. Shirley Neeley was serving as Commissioner of Education. We have substituted her successor, Robert Scott. *See* Tex. R. App. P. 7.2(a).

TEA's rules, policies, and procedures for funding, auditing, and investigating Texas charter schools are unconstitutional. We affirm the order of the district court denying the Commissioner's plea to the jurisdiction.[2]

**Factual and Procedural Background**

Appellee Alphonso Crutch Life Support Center is an open-enrollment charter school created by charter under chapter 12, subchapter D of the education code. An open-enrollment charter school is a part of the state's public school system and can be created by an institution of higher education, a non-profit organization, or a governmental entity. Tex. Educ. Code Ann. §§ 12.101(a), .105 (West 2006).

The dispute in this case originated out of the School's obligation to report its student attendance to the Texas Education Agency. Open-enrollment charter schools receive state funds under chapter 42 of the education code. *See id.* § 12.106 (West 2006). Under chapter 42, funds are disbursed on the basis of average daily attendance. *Id.* § 42.101 (West Supp. 2008). In order to report attendance information to TEA, each open-enrollment charter school must use the Public Education Information Management System (PEIMS) and comply with all applicable rules promulgated by TEA. *Id.* § 12.104(b)(2)(A) (West 2006), § 42.006 (West Supp. 2008).

---

[2] Numerous parents, students, and employees of the School also joined the lawsuit as plaintiffs, seeking declaratory relief regarding their rights under the education code and TEA's alleged practice of discrimination against African-Americans. The district court granted the portion of the Commissioner's plea to the jurisdiction dismissing the individual plaintiffs for lack of standing. No party has appealed this portion of the district court's decision.

2

In 2004, TEA audited the School's student attendance records and determined that the School had committed numerous errors in its reporting and that, as a result, the School's reported attendance was higher than its actual attendance. In accordance with section 42.258 of the education code, which requires TEA to recover any overallocation of state funds either by requesting and obtaining a refund or by withholding from subsequent allocations of state funds, *see id.* § 42.258(a) (West 2006), the auditors recommended that $1,619,813 be withheld from the School to recover the alleged overallocation. The School conceded to a mistake in its reporting, but contested other findings of the auditors, arguing that only $431,500 should be withheld under section 42.258. Upon reviewing the school's arguments, TEA concluded that the withholding amount should instead be increased to $1,795,230. The School requested a public hearing under the Texas Administrative Code. This request was denied by TEA, and TEA immediately began withholding money from the school to recoup the overallocation.

In response, the School filed a lawsuit in district court against the Commissioner of Education. The School seeks a declaration that the Commissioner's actions violate state law—including chapter 39 and section 42.258 of the education code—by not providing a "due process hearing," or in the alternative, that the statutes are unconstitutional for not providing a right to a hearing. In addition, the School claims that TEA's rules, policies, and procedures for funding, auditing, and investigating Texas charter schools are unconstitutional. The Commissioner filed a plea to the jurisdiction based on sovereign immunity. The district court denied the plea as to the School's claims, and the Commissioner filed this appeal contesting the district court's denial of his plea.

**Standard of Review**

The Commissioner appeals the district court's denial of his plea to the jurisdiction. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008), § 101.001(3) (West 2005). A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 716 (Tex. App.—Austin 2007, no pet.). Whether a court has subject-matter jurisdiction and whether a plaintiff has affirmatively demonstrated subject-matter jurisdiction are questions of law that we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In deciding a plea to the jurisdiction that challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* We construe the pleadings liberally in favor of the plaintiffs and look to the pleader's intent. *Id.* If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id.* at 227. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction. *Id.* at 227-28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court should rule on the plea to the jurisdiction as a matter of law. *Id.* at 228.

**Sovereign Immunity**

Sovereign immunity embraces two principles: immunity from suit and immunity from liability. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). The Commissioner argues that the School's claims—request for declaratory relief regarding certain

4

claimed statutory rights, request for declaratory relief regarding a constitutional right to due process in these circumstances, and request for declaratory relief that certain statutes, rules, or policies are unconstitutional—are barred by immunity from suit and, therefore, must be dismissed for lack of subject-matter jurisdiction. A suit against a state officer lawfully exercising his governmental functions is considered a suit against the State and is barred by sovereign immunity absent legislative consent. *McLane Co. v. Strayhorn*, 148 S.W.3d 644, 649 (Tex. App.—Austin 2004, pet. denied). It is for the legislature alone "to waive or abrogate sovereign immunity." *Federal Sign*, 951 S.W.2d at 409. In addressing the Commissioner's arguments, we do not weigh the merits of the School's claims. *See County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). We determine only whether sovereign immunity bars the claims.

Claims like those alleged by the School have been found not to implicate the sovereign immunity doctrine. A private litigant does not need legislative permission to compel a state official to comply with state law. *Federal Sign*, 951 S.W.2d at 404. A state official's illegal or unauthorized actions are not considered acts of the State. *Id.* Accordingly, sovereign immunity from suit does not apply to a cause of action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority. *Id.* In addition, "[i]t is well settled that no waiver of sovereign immunity is necessary before one may sue the State for the taking of a vested property right without due course of law." *Texas State Employees Union v. Texas Workforce Comm'n*, 16 S.W.3d 61, 66 (Tex. App.—Austin 2000, no pet.).[3] Assuming the truth of the School's

---

[3] The Commissioner specifically attacks the School's due process claims by pointing to the Texas Supreme Court's decision in *Federal Sign v. Texas Southern University*, which provides that the "State's immunity to suit is, purely as a matter of sovereignty, impervious to due process

pleadings—i.e. that the School had a right to the disputed state funds and the Commissioner was obligated to provide a hearing yet failed to do so—the School is entitled to seek redress under the due-course-of-law provision of the Texas Constitution. *See id.* at 66-67; Tex. Const. art. I, § 19. Further, it is well-recognized that a suit seeking a declaratory judgment that a state agent is acting pursuant to an unconstitutional law is not barred by sovereign immunity. *See Rylander v. Caldwell*, 23 S.W.3d 132, 136 (Tex. App.—Austin 2000, no pet.). When a party's rights have been violated by a state agent's action pursuant to an unconstitutional law, as alleged in this case, that party may sue to remedy the violation. *See id.* In sum, sovereign immunity is generally inapplicable to the types of claims asserted by the School. The Commissioner asserts, however, that because each of the School's claims is in essence an attempt to force the payment of State funds, the claims are barred by sovereign immunity.

In *Texas Natural Resource Conservation Commission v. IT-Davy*, a contractor for hazardous waste clean-up had sued the contracting state agency to recover payments allegedly due as equitable adjustments in connection with the contract. 74 S.W.3d 849, 851 (Tex. 2002). The contractor did not obtain legislative consent for its lawsuit, and the agency filed a plea to the jurisdiction based on sovereign immunity. *See id.* at 852. While acknowledging that declaratory relief against a state official who acts without legal or statutory authority does not implicate

---

concerns." 951 S.W.2d 401, 411 (Tex. 1997). However, this statement is not relevant to our inquiry here. In *Federal Sign*, the court considered whether a sovereign immunity defense, itself, denied a plaintiff due process. *See id.* at 409. Here, we consider whether sovereign immunity bars a due process claim. The School claims that the Commissioner's actions violated its due process rights, not that a court's application of sovereign immunity to its claims would violate its due process rights.

6

the doctrine of sovereign immunity, the supreme court in *IT-Davy* held that declaratory judgment suits against a state official seeking to impose contractual liabilities against the State are, in essence, "suits against the State" that attempt to "control state action" and, consequently, cannot be maintained without legislative permission. *See id.* at 855-56. The Court dismissed the contractor's claims for want of jurisdiction, declaring that "private parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim." *Id.* at 856, 860.

Courts of appeals have followed *IT-Davy*'s holding that sovereign immunity bars a suit for equitable relief that is actually a suit to obtain benefits alleged due under a contract or other agreement.[4] It is a different situation, however, where the suit seeking payment is a suit for declaratory relief against a state official for violation of a *statute*. As the Texas Supreme Court recently stated in *City of El Paso v. Heinrich*: "where statutory or constitutional provisions create an entitlement to payment, suits seeking to require state officers to comply with the law are not barred by immunity merely because they compel the state to make those payments." No. 06-0778,

---

[4] *See, e.g.*, *Texas S. Univ. v. State St. Bank & Trust Co.*, 212 S.W.3d 893, 908-09 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (declaratory judgment claim concerning validity of equipment lease with state university); *State v. 1165 Airport Blvd. Office Bldg.*, 212 S.W.3d 610, 617-18 (Tex. App.—Austin 2006, no pet.) (declaratory judgment to construe terms of office lease with State); *County of Galveston v. Tolle*, 176 S.W.3d 859, 862-63 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (declaratory and injunctive relief regarding rights under county's retiree medical insurance agreement); *Town of Highland Park v. Iron Crow Constr., Inc.*, 168 S.W.3d 313, 317 (Tex. App.—Dallas 2005, no pet.) (declaratory judgment action to enforce arbitration clause in contract with town); *Smith v. Lutz*, 149 S.W.3d 752, 759-60 (Tex. App.—Austin 2004, no pet.) (injunctive relief to obtain return of intellectual property, the rights to which were governed by contract with state university).

7

2009 Tex. LEXIS 253, at *10 (Tex. May 1, 2009). Such a suit does not attempt to exert control over the State, but attempts to reassert the control of the State. *Id.* at *11.

The supreme court in *Heinrich* further considered what specific *remedy* can be properly sought under such an "ultra vires" claim (i.e. a claim that a state official has acted outside his official capacity). *See id.* at *16. The court held that, absent legislative authorization, retrospective relief consisting of monetary payments by the government implicates sovereign immunity. Conversely, prospective relief would not implicate immunity, even if the judicially-enforced compliance with the applicable statutory or constitutional provisions resulted in monetary payments by the government. *See id.* at *22-24; *City of Round Rock v. Whiteaker*, 241 S.W.3d 609, 633-34 (Tex. App.—Austin 2007, pet. denied) (prospective declaratory, injunctive, and mandamus relief not barred by immunity).

> This compromise between prospective and retroactive relief, while imperfect, best balances the government's immunity with the public's right to redress in cases involving ultra vires actions, and this distinction "appear[s] in the immunity of the United States, and in the law of most states' immunity from state-law claims." It also comports with the modern justification for immunity: protecting the public fisc. Moreover, it is generally consistent with the way our courts of appeals have interpreted [*City of Houston v.*] *Williams* [216 S.W.3d 827 (Tex. 2007)]. And finally, it ensures that statutes specifically directing payment, like any other statute, can be judicially enforced going forward.

*Heinrich*, 2009 Tex. LEXIS 253, at *22-23 (citations omitted). We apply the Texas Supreme Court's holdings in *IT-Davy* and *Heinrich* to the School's pleadings in this case.

First, we note that the School seeks declaratory relief regarding its rights under statutes and the Texas Constitution, not under a contract or other agreement. Consequently,

8

sovereign immunity does not bar the School's claims under *IT-Davy*. In an attempt to relate the School's lawsuit to the factual situation in *IT-Davy*, in which the action was plainly based on contract, the Commissioner points out that the School is subject to a charter with TEA. The Commissioner cites to language in the education code stating that the charter for an open-enrollment charter school is "in the form of a written contract." Tex. Educ. Code Ann. § 12.112 (West 2006). However, even assuming the written agreement between the School and the State Board of Education is a contract, the mere existence of a contract between parties does not transform any possible legal claim between the parties into a contract claim. Here, the School is seeking to enforce the constitution and statutes, not the written charter.[5] Specifically, the agreement entered into by the School states that the charter's terms include *both* "this contract" and "applicable law." Moreover, while the agreement sets forth numerous obligations of the School, the statutory duties allegedly breached by the Commissioner (e.g. failure to provide a hearing) are neither contained within the charter nor required to be by statute. *See id.* § 12.111 (West 2006) (setting forth required contents of charter for open-enrollment charter school).

Next, we determine whether the School seeks retroactive relief in the form of monetary payments, which is barred by sovereign immunity under *Heinrich*. Several of the School's "Causes of Action" in its petition seek declaratory relief that, either under the constitution or under statute, it is entitled to additional due process, particularly a hearing. Because requiring the

[5] The School's petition, after asserting a claim for declaratory relief regarding a claimed due process right to a hearing under section 403.055 of the government code and section 42.258 of the education code, states that "[t]he State is even obligated to do this by contract." To the extent that this sentence asserted a separate cause of action to enforce a contract between the School and the Texas State Board of Education, sovereign immunity to suit would bar the cause of action. However, we do not read the petition to assert such a claim.

Commissioner to participate in a hearing prior to imposing further deductions from the School's funding would be prospective, non-monetary relief, the School's claims seeking such relief are not barred by sovereign immunity. *See Whiteaker*, 241 S.W.3d at 633-34.

The School also seeks a declaratory judgment that the Commissioner's audit and investigation of the School violated chapter 39 of the education code, that the rules, policies, and procedures for the auditing and investigating of charter schools are unconstitutional, and that all evidence generated by the Commissioner's actions be deemed accumulated in violation of the School's right to due process. To the extent any relief from such violations would result in repayment by the Commissioner of past amounts withheld from the School, these claims would result in retroactive relief that is barred by sovereign immunity in accordance with *Heinrich*. On the other hand, to the extent any relief from such violations would constitute a prospective recalculation of the amount owed by the School for its reporting errors, and a reduced overallocation owed, these causes of action are not barred by sovereign immunity based on *Heinrich*. It is unclear, based on the School's current pleadings and the record before us, whether the declarations sought by the School are requests that effectively seek retroactive or prospective relief. We are not inclined to dismiss the School's claims on this issue without affording it the opportunity to amend its pleadings to clarify the precise relief sought. *See Mendiola v. City of Laredo*, 239 S.W.3d 344, 350-51 (Tex. App.—San Antonio 2007, no pet.).

**Failure to State a Claim**

The Commissioner also argues that dismissal of the School's claims is proper for failure to state a cause of action within a waiver of sovereign immunity. The Commissioner

specifically addresses the School's due process claims, its ultra vires claims, and its reliance upon section 7.057 of the education code for jurisdiction.

*Due Process Claims*

Regarding the School's due process claims, the Commissioner argues that the School failed to plead the existence of a protected right. According to the Commissioner, any right of the School to the receipt of state funds under its charter is contingent on the School's compliance with the charter's terms, and therefore, the inaccuracies discovered in the School's attendance reporting eliminated any right to payment. However, this argument reveals a question of fact that needs to be determined—the extent of the inaccuracy. We decline to hold, and the Commissioner points to no authority requiring us to hold, that upon discovering an inaccuracy in a charter school's reporting, the Commissioner may withhold an amount unrelated to the amount of the inaccuracy.[6]

The Commissioner also asserts that no as-applied due process claim may be brought because due process was in fact accorded to the School. The Commissioner points to the School's hiring of an accounting firm and submitting a response to TEA's preliminary report as proof that both "notice and an opportunity to be heard" were in fact given. *See University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). The Commissioner has presented this issue to us via an appeal of a denial of a plea to the jurisdiction. Because the Commissioner has chosen this route, the trial court was obliged, as we

---

[6] In addition, the Commissioner in the portion of its plea to the jurisdiction addressing the School's due process claims did not argue that the School had no property interest for which process was due, but argued only that the School did in fact receive due process.

11

are, to indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *See Miranda*, 133 S.W.3d at 228.

According to the School's pleadings, while an opportunity to respond was in fact provided to the School, such opportunity was insufficient to survive a due process challenge. Due process requires that the opportunity to be heard be "at a meaningful time and in a meaningful manner." *Than*, 901 S.W.2d at 930 (citing *Mathews*, 424 U.S. at 333). The amount of process that is due is measured by a flexible standard that depends on the practical requirements of the circumstances. *Id.* (citing *Mathews*, 424 U.S. at 333). The court must balance (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards, and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* We believe in this case that the inquiries involved in a due process analysis would be better served by a more complete development of the factual situation, rather than through the procedural limitations of a plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 227 ("When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case . . . ."); *Texas State Employees Union*, 16 S.W.3d at 67 ("We offer no opinion on whether sovereign immunity may in fact ultimately bar [plaintiffs'] claim. This will depend upon the facts as they are developed.").

*Other Claims*

The Commissioner challenges the School's reliance on section 7.057 of the education code[7] to establish jurisdiction for its declaratory judgment claims and asserts that the School's ultra vires claims fail because the Commissioner acted within his statutory authority as a matter of law.

The Commissioner did not present either argument to the district court in his plea to the jurisdiction. The Commissioner relies on section 51.014 of the civil practice and remedies code for his appeal of the trial court's denial of his plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (allowing appeal from interlocutory order of district court that "grants or denies a plea to the jurisdiction by a governmental unit"). Because section 51.014 is a narrow exception to the general rule that only final judgments and orders are appealable, we strictly construe what may be considered in an interlocutory appeal. *See City of Dallas v. First Trade Union Sav. Bank*, 133 S.W.3d 680, 686-87 (Tex. App.—Dallas 2003, pet. denied). We are guided by this Court's holding in *Austin Independent School District v. Lowery*:

> Because our jurisdiction in the interlocutory appeal is limited, we confine our review to the ruling on the plea to the jurisdiction that was actually filed and do not address whether the district court erred in denying the plea on a ground that was not argued below. Although subject matter jurisdiction cannot be waived and may be raised for the first time in an appeal from a final judgment, section 51.014(a)(8) of the civil practice and remedies code does not grant this Court jurisdiction to review claims that were neither included in the plea to the jurisdiction nor considered by the district court.

---

[7] "A person aggrieved by an action of the agency or decision of the commissioner may appeal to a district court in Travis County." Tex. Educ. Code Ann. § 7.057(d) (West 2006).

13

212 S.W.3d 827, 833-34 (Tex. App.—Austin 2006, pet. denied) (citations omitted). Since neither the Commissioner's arguments concerning education code section 7.057 nor his arguments concerning ultra vires claims were included in the Commissioner's plea to the jurisdiction, the district court did not consider the arguments and did not issue any interlocutory order in response to the arguments. Accordingly, we lack jurisdiction in this appeal to consider whether the School may rely on section 7.057 of the education code for jurisdiction or whether the Commissioner acted within his statutory authority.

**Conclusion**

A plaintiff may assert claims for declaratory relief regarding its constitutional or statutory rights where the granting of such relief would not result in monetary payments for past violations, but rather would result in the prospective application of the applicable constitutional provisions and statutes. Without passing on the merits of Alphonso Crutch Life Support Center's claims, we affirm the district court's order denying the Commissioner's plea to the jurisdiction as to the School's claims. In the district court, the School will have the opportunity to amend its pleadings as necessary to clarify the precise relief sought pursuant to its claims relating to the overallocation decision.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   July 2, 2009