# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00509-CV

**Alphonso Crutch Life Support Center, Inc., Appellant**

**v.**

**Mike Morath, Commissioner of Education in his Official Capacity; and John Doe and Jane Doe, in their Official Capacities, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. D-1-GN-05-003667, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following a bench trial, Alphonso Crutch Life Support Center, Inc. appeals the trial court's final judgment in favor of Mike Morath, the Commissioner of Education in his official capacity.[1] The Commissioner has filed a motion to dismiss, arguing that Alphonso Crutch's claims are moot. For the following reasons, we agree with the Commissioner, grant his motion, vacate the trial court's judgment, and dismiss this case for want of jurisdiction.

## BACKGROUND

In 1998, a contract for an open-enrollment charter school was executed between Alphonso Crutch, a non-profit organization, and the State Board of Education. Alphonso Crutch

---

[1] Michael Williams was the Commissioner of Education when the underlying suit was filed. Williams's successor, Mike Morath, has been automatically substituted as a party. *See* Tex. R. App. P. 7.2(a).

thereafter began operating an open-enrollment charter school in Houston, Texas, serving primarily at-risk students and as an alternative to alternative schools. After an audit in 2004, the TEA determined that Alphonso Crutch had over reported its attendance and began withholding state funds from Alphonso Crutch to recover overallocated state funds. *See Scott v. Alphonso Crutch Life Support Ctr.*, 392 S.W.3d 132, 135 (Tex. App.—Austin 2009, pet. denied) (*Crutch I*).

Alphonso Crutch filed suit against the Commissioner in 2004, asserting statutory and constitutional violations based on the withholding of state funds for the 2003-2004 school year.[2] *See Crutch I*, 392 S.W.3d at 135–36. Alphonso Crutch did not dispute that there was a mistake in its reporting but argued that the amount of funds attributable to the overallocation was significantly lower than the amount that TEA was seeking to recover. *Id.* at 135. Alphonso Crutch also filed a subsequent suit against the Commissioner in 2008, asserting similar statutory and constitutional violations concerning the overallocation decision attributable to school years subsequent to the 2003–2004 school year.[3] *See Scott v. Alphonso Crutch LSC Charter Sch., Inc.*, 392 S.W.3d 165, 168

---

[2] Alphonso Crutch sought a declaration that "the Commissioner's actions violated state law—including chapter 39 and section 42.258 of the education code—by not providing a 'due process hearing,' or in the alternative, that the statutes are unconstitutional for not providing a right to a hearing" as to the overallocation decision. *See Scott v. Alphonso Crutch Life Support Ctr.*, 392 S.W.3d 132, 135–36 (Tex. App.—Austin 2009, pet. denied) (*Crutch I*). Alphonso Crutch also claimed that "TEA's rules, policies, and procedures for funding, auditing, and investigating Texas charter schools are unconstitutional." *Id.* at 136.

[3] Alphonso Crutch sought declarations based on its allegations that the Commissioner's actions concerning the overallocated state funds that Alphonso Crutch allegedly received violated state law and provisions of the Texas Constitution, including the taking of property, due course of law, and equal protection. *See Scott v. Alphonso Crutch LSC Charter Sch., Inc.*, 392 S.W.3d 165, 168 (Tex. App.—Austin 2010, pet. denied) (*Crutch II*).

(Tex. App.—Austin 2010, pet. denied) (*Crutch II*). Around this time, Alphonso Crutch ceased operations as a charter school.

Both *Crutch I* and *Crutch II* were the subject of interlocutory appeals by the Commissioner from orders denying the Commissioner's pleas to the jurisdiction. In *Crutch I*, this Court concluded that "sovereign immunity [was] generally inapplicable to the types of claims asserted by [Alphonso Crutch]" and affirmed the trial court's order. 392 S.W.3d at 137, 141. In *Crutch II*, this Court affirmed the trial court's order with respect to Alphonso Crutch's ultra vires and equal protection claims but reversed the order with respect to Alphonso Crutch's remaining constitutional claims, including its due process claim, and dismissed those claims for lack of jurisdiction. 392 S.W.3d at 174. Focusing on Alphonso Crutch's "contingent" interest in state funding, we concluded that it did not have a "vested right" in those funds and, therefore, that its pleadings affirmatively negated the existence of jurisdiction over its due process and takings claims. *Id.* at 171. But we concluded that the Commissioner failed to challenge Alphonso Crutch's equal protection claim in his plea and that, because the pleadings did not affirmatively negate or demonstrate the trial court's jurisdiction to hear Alphonso Crutch's ultra vires claims, it should have the opportunity to amend its pleadings on remand. *Id.* at 171, 174.

After the remands to the trial court from this Court in *Crutch I* and *Crutch II*, the cases were consolidated, and Alphonso Crutch filed a post-consolidation amended petition. In its amended petition that was filed in February 2014, Alphonso Crutch asserted equal protection, ultra vires, due process, due course of law, takings, and declaratory judgment claims based on the Commissioner's actions concerning the overallocated state funds. At the time that it filed its

3

amended petition, Alphonso Crutch was no longer a charter holder because its charter was non-renewed in 2013. In a separate suit filed against the Commissioner and the Texas Education Agency in 2013, Alphonso Crutch challenged the agency decision not to renew its charter. *See Alphonso Crutch v. Williams*, No. 03-13-00789-CV, 2015 Tex. App. LEXIS 12151 (Tex. App.—Austin Nov. 30, 2015, pet. filed) (mem. op.) (*Crutch III*). In that case, Alphonso Crutch sought judicial review of the administrative decision to non-renew its charter; asserted due process and due course of law, equal protection, ultra vires, open courts, and declaratory judgment claims based on the non-renewal of its charter; and brought a rule challenge. The trial court granted appellees' plea to the jurisdiction and dismissed Alphonso Crutch's claims in October 2013, and this Court affirmed the trial court's ruling. *See id*. at *1.

In the underlying proceeding in this appeal, the consolidated cases were tried to the bench in February 2015, and the trial court signed the final judgment in July 2015, rendering judgment in favor of the Commissioner. The trial court also entered findings of fact and conclusions of law, including that the Commissioner was entitled to judgment on Alphonso Crutch's equal protection and ultra vires claims and that its due process and takings claims had already been dismissed for lack of subject matter jurisdiction in *Crutch II*.[4] This appeal followed.

---

[4] The trial court's conclusions of law included:

3.  Alphonso Crutch's class of one equal protection claim fails because Alphonso Crutch failed to show disparate treatment.

4.  Alphonso Crutch failed to provide sufficient evidence to show that the Commissioner treated Alphonso Crutch differently because of race.

* * *

4

**ANALYSIS**

In his motion to dismiss, the Commissioner argues that Alphonso Crutch's claims are moot. "The mootness doctrine dictates that courts avoid rendering advisory opinions by only deciding cases that present a 'live' controversy at the time of the decision." *Texas Health Care Info. Council v. Seton Health Plan Inc.*, 94 S.W.3d 841, 846 (Tex. App.—Austin 2002, pet. denied); *see In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) ("A case becomes moot if a controversy ceases to exist between the parties at any stage of the legal proceedings, including the appeal."); *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) (noting that "a controversy must exist between the parties at every stage of the legal proceeding, including the appeal" for a plaintiff to have standing and that, if controversy ceases to exist, case becomes moot); *Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (per curiam) (concluding appeal moot because "there ceased to be a live controversy" between parties and dismissing case as moot); *Texas Alcoholic Beverage Comm'n v. Carlin*, 477 S.W.2d 271, 273–74 (Tex. 1972) (affirming court of appeals's dismissal of case seeking to set aside administrative order suspending a permit and license and concluding that case was moot based upon subsequent actions of parties and that "particular

---

6.     Alphonso Crutch's ultra vires claim fails because Alphonso Crutch did not prove that the Commissioner acted without constitutional or statutory authority or that he failed to perform a purely ministerial act required by statute.

7.     Merely showing that the Commissioner reached an incorrect result is not enough to overcome the Commissioner's immunity and sustain an ultra vires claim.

5

controversy that gave rise to this suit, i.e. the dispute over the suspension of . . . permit and . . . license, has become simply an academic question").

"A case becomes moot when:  (1) it appears that one seeks to obtain a judgment on some controversy, when in reality none exists; or (2) when one seeks a judgment on some matter which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy."  *Texas Health Care Info. Council*, 94 S.W.3d at 846–47; *see Carlin*, 477 S.W.2d at 273 (noting that "judgment upholding or overturning the suspension order will not finally resolve any existing controversy between the parties").  If a case becomes moot, the parties lose standing to maintain their claims.  *Lara*, 52 S.W.3d at 184.  A court has no jurisdiction over a claim made by a plaintiff who lacks standing and, as such, must dismiss it.  *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150–51 (Tex. 2012).

In his motion to dismiss, the Commissioner argues that Alphonso Crutch's claims are moot because its charter school has not operated since 2008, its charter was non-renewed in 2013, and all of its claims "relate to [the Commissioner]'s actions against it based on [Alphonso Crutch]'s past—now fully extinguished—operation as a charter school."  In his appellee brief, the Commissioner consistently argues that Alphonso Crutch's claims are moot because it no longer holds a charter and "is no longer subject to the Commissioner's regulatory actions."  We turn then to a review of Alphonso Crutch's claims to determine whether a live controversy exists between the parties in light of the undisputed subsequent events of the non-renewal of its charter and the cessation of its charter school and in the procedural context of this consolidated appeal from *Crutch I* and *Crutch II.*

In its amended petition, Alphonso Crutch's equal protection, ultra vires, due process, due course of law, takings and declaratory judgment claims were based on the Commissioner's past actions concerning the overallocated state funds, and it sought reinstatement of its charter contract and "all funds the Commissioner withheld 'to' recover funding [Alphonso] Crutch was in fact entitled to," as well as declaratory relief. Alphonso Crutch conceded in its amended petition that "a suit against a governmental entity will not provide monetary damages for relief" but stated that it was "not seeking retroactive payments so much as recovery of public school funding it received for the education of its students that the Commissioner subsequently illegally took back." In its response to the Commissioner's motion to dismiss in this appeal, Alphonso Crutch further argued that this Court could order the following remedies:

> In this instance the Court can enter a declaration and hold that Crutch has had its Constitutional rights violated or that the State has enforced an unconstitutional rule against it, and then it can employ a variety of remedies. It can order those who are owed by the Corporation as a result of the withholding be paid at least something—such as the many teachers who lost retirement monies. Further, a declaration that the actions were the result of racial discrimination will have an enormous impact on the Corporation and the School and their ability to do business in the future.

Alphonso Crutch, however, has not cited, and we are unaware of, authority that would support its requested remedies of reinstatement of its charter, the recovery of public school funding based on the Commissioner's past actions concerning the overallocated funds, or declaratory relief as to the Commissioner's past overallocation decisions. Here, Alphonso Crutch's alleged injuries from the Commissioner's past actions have already occurred, and sovereign immunity generally precludes monetary damages for past conduct. *See Rolling Plains Groundwater Conservation Dist.*

7

*v. City of Aspermont*, 353 S.W.3d 756, 760 (Tex. 2011) (per curiam) (concluding that immunity barred claims against city "for past due fees, penalties, and costs [that] would result in the payment of retroactive monetary damages" and, therefore, that claims were properly dismissed); *City of Dallas v. Albert*, 354 S.W.3d 368, 378 (Tex. 2011) ("[A] party cannot circumvent governmental immunity by characterizing a suit for money damages as a claim for a declaratory judgment."); *City of Hous. v. Williams*, 216 S.W.3d 827, 828–29 (Tex. 2007) (per curiam) (holding that retired firefighters could not pursue declaratory judgment action against city to recover amounts previously withheld); *City of Galveston v. CDM Smith, Inc.*, 470 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ("[A] plaintiff may not convert a claim for payment of a past due sum (damages) into a prayer for an injunction against refusing to pay the sum, for a declaration that the sum must be paid, or for an order reversing a governmental entity's decision not to pay.").

Further, because of sovereign immunity, the only possible remedies for Alphonso Crutch's claims against the Commissioner are limited to prospective relief. *See Crutch I*, 392 S.W.3d at 139 ("To the extent any relief from [the Commissioner's alleged] violations would result in repayment by the Commissioner of past amounts withheld from the School, these claims would result in retroactive relief that is barred by sovereign immunity in accordance with *Heinrich*."); *see also City of El Paso v. Heinrich*, 284 S.W.3d 366, 373–77 (Tex. 2009) (describing available remedies against governmental official sued in official capacity for ultra vires actions and holding that ultra vires claimant was only entitled to prospective relief because retrospective relief is generally barred by governmental immunity); *Texas Educ. Agency v. American YouthWorks, Inc.*, ___ S.W.3d ___, Nos. 03-14-00283-CV & 03-14-00360-CV, 2016 Tex. App. LEXIS 6198, at

8

*48–49 (Tex. App.—Austin June 10, 2016, no pet. h.) (concluding that ultra vires claims challenging revocation of school charter were "barred by sovereign immunity because they seek or would require forms of relief that are retrospective in nature" and noting that "actual relief they seek—ultimately that their charters not be revoked under this particular revocation decision, but also that they be allowed to challenge past accountability ratings on which that decision was based—necessarily requires somehow undoing or changing prior acts or events").

Moreover, this Court in *Crutch II* dismissed Alphonso Crutch's due process, due course of law, and takings claims for lack of subject matter jurisdiction because Alphonso Crutch "[had] no vested right in the funds that [had] allegedly been wrongfully withheld." 392 S.W.3d at 170–71; *see id*. (observing that school's constitutional claims required existence of vested right). And Alphonso Crutch does not have a constitutionally protected property interest in the continuation of its charter. *See Texas Educ. Agency v. Academy of Careers & Techs., Inc.*, ___ S.W.3d ___, No. 03-15-00528-CV, 2016 Tex. App. LEXIS 7404, at *10 (Tex. App.—Austin July 13, 2016, no pet. h.) (noting that "charter schools have no constitutionally protected property interest in their charters"); *American YouthWorks*, 2016 Tex. App. LEXIS 6198, at *33 (concluding that charter holders "do not have a constitutionally protected property interest in the continuation of their charters").

In this context, we conclude that any prospective relief against the Commissioner at this point as to Alphonso Crutch's remaining ultra vires, equal protection, and declaratory judgment claims would not have "any practical legal effect on a then-existing controversy." *See Texas Health Care Info. Council*, 94 S.W.3d at 846–47; *see also Lara*, 52 S.W.3d at 183 (concluding that

9

plaintiffs' claims were moot because "[t]hey no longer face[d] the unconstitutional conduct about which they complain, and thus any prospective relief we might grant cannot help them"); *Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229 (Tex. 1993) (citing *Landgraf v. USI Film Prods.*, 968 F.2d 427, 432 (5th Cir. 1992), for its holding that "there is no right to declaratory relief for purposes of vindication"); *American YouthWorks*, 2016 Tex. App. LEXIS 6198, at *49–50 (concluding that this Court "cannot think of, and the Charter Holders have not articulated, any prospective declaratory relief that would have any effect on their charter revocation"); *Texas Logos, LP v. Texas Dep't of Transp.*, 241 S.W.3d 105, 114 (Tex. App.—Austin 2007, no pet.) ("The UDJA does not create or augment a trial court's subject-matter-jurisdiction—it merely provides a remedy where subject-matter-jurisdiction already exists."). Thus, we conclude that Alphonso Crutch's remaining claims are moot. *See Texas Health Care Info. Council*, 94 S.W.3d at 846–47.

In its response to the motion to dismiss, Alphonso Crutch argues that, even if its claims are moot, the capable-of-repetition-yet-evading-review, public interest, and collateral consequences exceptions to the mootness doctrine apply. A common element of the public interest and the capable-of-repetition-yet-evading-review exceptions is that the complained-of action be capable of repetition but yet not effectively reviewable. *See Texas A&M Univ.-Kingsville v. Yarbrough*, 347 S.W.3d 289, 290 (Tex. 2011) ("'Capable of repetition yet evading review' is a rare exception to the mootness doctrine" that only applies "when 'the challenged act is of such short duration that the appellant cannot obtain review before the issue becomes moot.'" (citation omitted)); *Federal Deposit Ins. Corp. v. Nueces Cty.*, 886 S.W.2d 766, 767 (Tex. 1994) (stating that "the public

10

interest exception permits judicial review of questions of considerable public importance if the nature of the action makes it capable of repetition and yet prevents effective judicial review").[5]

An issue does not evade review if appellate courts have addressed the issue on the merits. *Meeker v. Tarrant Cty. Coll. Dist.*, 317 S.W.3d 754, 761–62 (Tex. App.—Fort Worth 2010, pet. denied); *see Federal Deposit Ins. Corp.*, 886 S.W.2d at 767 (concluding that case did not meet "suggested requirements" of public interest exception because "Fifth Circuit Court of Appeals addressed [the] precise issue in two recent decisions"). Other courts have addressed challenges to school funding issues and constitutional and ultra vires claims brought by school districts and charter schools against the Commissioner. *See Morath v. Sterling City Indep. Sch. Dist.*, No. 14-0986, ___ S.W.3d ___, 2016 Tex. LEXIS 570, at *2–3, 7–8 (Tex. 2016) (observing repeated challenges to school funding over past thirty years and addressing school district's ultra vires claims for declaratory judgment concerning "Clawback Provision"); *Academy of Careers & Techs.*, 2016 Tex. App. LEXIS 7404, at *1–3 (addressing charter holder's constitutional and ultra vires claims against Commissioner in context of appeal from temporary injunction that enjoined revocation of charter); *Morath v. La Marque Indep. Sch. Dist.*, No. 03-16-00062-CV, 2016 Tex. App. LEXIS 6694, at *1 (Tex. App.—Austin June 24, 2016, no pet. h.) (mem. op.) (addressing school district's constitutional and ultra vires claims against Commissioner that challenged revocation of district's accreditation status). Thus, we conclude that neither of these two exceptions applies here.

---

[5] Although courts of appeals have recognized the public interest exception, the Texas Supreme Court has not decided its viability. *Federal Deposit Ins. Corp. v. Nueces Cty.*, 886 S.W.2d 766, 767 (Tex. 1994).

We also conclude that the collateral consequences exception does not apply. That exception "is invoked only under narrow circumstances when vacating the underlying judgment will not cure the adverse consequences suffered by the party seeking to appeal that judgment." *Marshall v. Housing Auth. of San Antonio*, 198 S.W.3d 782, 789 (Tex. 2006). "Such narrow circumstances exist when, as a result of the judgment's entry, (1) concrete disadvantages or disabilities have in fact occurred, are imminently threatened to occur, or are imposed as a matter of law; and (2) the concrete disadvantages and disabilities will persist even after the judgment is vacated." *Id.* Alphonso Crutch cites testimony at the bench trial that its good name and reputation have been lost based on the Commissioner's complained-of actions, but it fails to identify "concrete disadvantages or disabilities" that occurred as a result of the judgment in favor of the Commissioner.

## CONCLUSION

Because we conclude that Alphonso Crutch's remaining claims are moot and that no exception to the mootness doctrine applies, we grant the Commissioner's motion to dismiss, vacate the trial court's judgment, and dismiss this case for want of jurisdiction. *See Heckman*, 369 S.W.3d at 150–51 ("If a case is or becomes moot, the court must vacate any order or judgment previously issued and dismiss the case for want of jurisdiction.").

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Vacated and Dismissed for Want of Jurisdiction

Filed:   September 7, 2016