# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00443-CV

**Erik Leonard, Appellant**

**v.**

**Greg Abbott, Attorney General of Texas; the Harris County-Houston Sports Authority; Harris County; and the City of Houston, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. GN300-269, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## O P I N I O N

Appellant Erik Leonard appeals the orders of the trial court declaring Leonard a vexatious litigant and dismissing his lawsuit after he failed to furnish court-ordered security. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 11.001-.055 (West 2002). In six issues, Leonard contends that the trial court violated his rights to due process, equal protection, and open courts, and that appellees failed to meet their burden of proof under the vexatious litigant statute. We will affirm the orders.

## BACKGROUND

Leonard has a long history of filing lawsuits and appeals to contest the issuance and approval of bonds in Harris County related to the construction of new sports arenas in that locale. In August 1998, Leonard filed a *pro se* declaratory judgment action in Travis County District Court

against the Attorney General of Texas, the City of Houston, Harris County, and the Harris County-Houston Sports Authority. The suit, cause number 98-09828, challenged the August 1998 bond issue for the construction of the baseball stadium now known as Minute Maid Park, the home of major league baseball's Houston Astros. After the district court dismissed the suit for lack of subject-matter jurisdiction, Leonard appealed to this Court, and we affirmed. *See Leonard v. Cornyn*, 47 S.W.3d 524 (Tex. App.—Austin 1999, pet. denied). Leonard then unsuccessfully petitioned the United States Supreme Court for certiorari. *See Leonard v. Cornyn*, 531 U.S. 1081 (2001).

In March 2000, Leonard filed another suit in Travis County district court against the same defendants. This suit, cause number GN0-00717, requested declaratory and injunctive relief related to the bond issue for the construction of the football stadium now known as Reliant Stadium, the home of the National Football League's Houston Texans and the Houston Livestock Show and Rodeo. On May 18, 2000, the district court dismissed Leonard's suit for want of jurisdiction.

On May 24, 2000, in cause number GN001516, Leonard filed a virtually identical suit against the same parties in the same court. On June 8, 2000, the district court signed an order stating that "given a second opportunity to consider its jurisdiction," it was "still of the opinion" that it lacked subject-matter jurisdiction over Leonard's lawsuit. Leonard appealed the May 18 order to this court. We noted that Leonard's "request for declaratory judgment in this case involves the same 1996 election, the same 1997 legislation, and the same contention that voter approval of the bonds authorized pursuant to the 1996 election is required. This suit simply attacks a different sports venue." Because the issues Leonard raised had already been decided, we affirmed the judgment.

*See Leonard v. Cornyn*, 2001 Tex. App. LEXIS 5356 (Tex. App.—Austin 2001, pet. denied); *Leonard*, 47 S.W.3d at 524. Leonard again unsuccessfully petitioned the United States Supreme Court for certiorari. *See Leonard v. Cornyn*, 123 S.Ct. 608 (2002). He then filed a motion for rehearing with the Supreme Court, which was denied in January 2003.

In December 2000, Leonard filed cause number 00-12-07633-CV in Montgomery County district court against the chairman of the Harris County-Houston Sports Authority, this time attacking the financing of a new basketball arena. That lawsuit requested a "declaration that the 2000 arena referendum set by the Harris County-Houston Sports Authority which asked voters to authorize construction of a new arena be declared void." On May 24, 2001, the district court granted a plea to the jurisdiction and dismissed Leonard's suit. Leonard appealed to the Beaumont Court of Appeals, which affirmed the judgment. *See Leonard v. Burge*, 74 S.W.3d 135 (Tex. App.—Beaumont 2002, pet. denied).

In March 2002, Leonard filed suit against the Attorney General of Texas, the City of Houston, Harris County, and the Harris County-Houston Sports Authority in Travis County district court; cause number GN201013. Leonard again challenged the Attorney General's approval of bonds related to construction of sports arenas in Harris County. The district court granted a plea to the jurisdiction, and Leonard again appealed to this Court. We determined that Leonard did not timely file his notice of appeal, and dismissed the appeal for want of jurisdiction. *See Leonard v. Abbott*, 2002 Tex. App. LEXIS 8766 (Tex. App.—Austin 2002, pet. denied).

This appeal arises from two more suits that Leonard filed in January 2003, which were consolidated below. These suits named the same defendants as his previous suits and related

3

to the same claims. In fact, Leonard admits in his pleadings that his "same request for relief has been included in one lawsuit or another continuously from August 31, 1998 through January 27, 2003. There has been no significant development between January 27, 2003, and January 28, 2003, the date of this filing." Appellees filed a joint motion requesting that the district court declare Leonard a vexatious litigant and require security as a condition for him to continue prosecuting the suit. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 11.051-.055. The district court found that Leonard was a vexatious litigant, ordered him to furnish security in the amount of $80,000 within one month, and entered a prefiling order prohibiting Leonard from filing, *pro se*, new litigation in state court without permission of the local administrative judge.[1] *See id*. §§ 11.055, .101. Leonard failed to furnish the security. In accordance with statutory requirements, the district court dismissed his lawsuit. *See id*. § 11.056. Leonard appeals both the order finding him a vexatious litigant and limiting future lawsuits and the order dismissing his lawsuit.

**DISCUSSION**

In chapter 11 of the civil practice and remedies code, the legislature struck a balance between Texans' right of access to their courts and the public interest in protecting defendants from those who abuse our civil justice system. *See id*. §§ 11.001-.055. Under chapter 11, a trial court may place limitations on the litigation activities of a person determined by the court to be a "vexatious litigant." *See id*. § 11.101. The court may determine that the plaintiff is a vexatious litigant if the

---

[1] The amount of $80,000 was requested by appellees, and derived from the amount of attorneys' fees they had spent defending Leonard's prior lawsuits. From July 2000 through April 2003, the Sports Authority alone incurred bills in excess of $190,000 in defending against Leonard's lawsuits.

4

defendant demonstrates that there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant and that the plaintiff, in the seven-year period immediately preceding the date the defendant makes the motion under Section 11.051, has commenced, prosecuted, or maintained *in propria persona* at least five litigations, other than in small claims court, that have been finally determined adversely to the plaintiff. *See id*. § 11.054; *Pease v. Principal Residential Mortg., Inc.*, No. 03-02-00491-CV, 2004 Tex. App. LEXIS 4279, at *14 (Tex. App.—Austin 2004, no pet.) (mem. op.). If the court determines, based on evidence presented at a hearing, that the defendant is a vexatious litigant, it must order the plaintiff to furnish security for the benefit of the moving defendant in an amount related to the costs and attorneys' fees the defendant anticipates incurring in defending the litigation. *See* Tex. Civ. Prac. & Rem. Code Ann. § 11.055(a). If the plaintiff fails to furnish the court-ordered security by the time set in the order, the court must dismiss the suit. *See id*. § 11.056. The court may also, on its own motion or the motion of any party, enter a prefiling order prohibiting a plaintiff from filing, *pro se*, a new lawsuit in state court without leave of the local administrative judge. *See id*. § 11.101.

**Constitutionality of the vexatious litigant statute**

In his first and fourth issues, Leonard attacks both the finding that he is a vexatious litigant and the order requiring him to seek permission before filing new *pro se* lawsuits. *See id*. §§ 11.054, .101. Leonard argues that the statutes are unconstitutionally vague and violate his constitutional rights to due process,[2] equal protection, and access to the courts.[3] He also argues that

_____

[2] Leonard's due process claim is predicated on his theory that the statute is unconstitutionally vague. The vagueness doctrine is a component of the Constitution's due process guarantee.

5

the statutes are unconstitutionally vague because they do not provide a method for determining his probability of success in his lawsuit. *See id*. § 11.054. While not binding precedent on this Court, a Texas federal district court has determined that the vexatious litigant statute is not unconstitutionally vague. *See Liptak v. Banner*, No. 3:01-CV-0953-M, 2002 U.S. Dist. LEXIS 940, at *13 (N.D. Tex. Jan. 18, 2002). However, Leonard claims that the statute is vague because he could not have determined, before filing the underlying lawsuit, that there was no reasonable probability that he would prevail in the underlying case. *See id*.

We construe Leonard's argument regarding the vagueness of the statute as a challenge to the constitutionality of chapter 11 as applied. *See id*. §§ 11.001-11.102. A statute prohibiting conduct that is not sufficiently defined is void for vagueness. *In re Fisher*, No. 04-0112, 2005 Tex. LEXIS 394, at *52 (Tex. 2005); *see Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *Commission for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 437 (Tex. 1998). However, as the *Liptak* court observed, "any person of reasonable intelligence would be able to discern that if he were to file five lawsuits in seven years, all of which were decided in favor of the opposing party, were determined to be frivolous, or met a series of other standards, he may be subject to being labeled a vexatious litigant. There is no other practical reading of the subject statute." 2002 U.S. Dist. LEXIS 940, at *13. We agree. Chapter 11 sufficiently outlines a standard of conduct, and a core of

---

*Commission for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 437 (Tex. 1998).

[3] Leonard summarily recites that there "was no inquiry into the question of whether [he] abused the judicial system in any way." But he acknowledges that the "statute does not require such inquiry" and that "appellees did not call for such inquiry," and alleges only that his constitutional rights were violated.

6

prohibited activity is well defined therein. *Id.*; *see Margaret S. v. Edwards*, 794 F.2d 994, 997 (5th Cir. 1986).

Moreover, Leonard's own pleadings belie his claim that he could not have known he was at risk of being held to be a vexatious litigant. He acknowledges that his underlying lawsuit asserts the "same request for relief has been included in one lawsuit or another continuously from August 31, 1998 through January 27, 2003." With the knowledge that each of these previous lawsuits has been dismissed, Leonard nonetheless filed the same pleading again. Leonard should have known that there was no "reasonable probability" of success and that he was inviting the application of the vexatious litigant statute. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 11.054, .101. We hold that the vexatious litigant statute is not unconstitutionally vague.

Next, Leonard argues that the statutes permitting the orders unreasonably restrict access to the judicial system in violation of the open courts provision and discriminate against *pro se* litigants and "the Davids who sue Goliaths." *See* Tex. Const. art. 1 § 13. Article I, section 13 of the Texas Constitution provides in part that "all courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." *Id.*; *Howell v. Texas Workers' Comp. Comm'n*, 143 S.W.3d 416, 444 (Tex. App.—Austin 2004, pet. denied). "The open courts provision includes at least three separate guarantees: (1) courts must actually be operating and available; (2) the Legislature cannot impede access to the courts through unreasonable financial barriers; and (3) meaningful remedies must be afforded, 'so that the legislature may not abrogate the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigants' constitutional right of redress.'" *Howell*, 143

7

S.W.3d at 444 (quoting *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 520 (Tex. 1995)) (internal citations omitted). A claim of unconstitutionality under the open courts provision will only succeed if the claimant (1) has a cognizable common-law cause of action being restricted by a statute, and (2) the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 843 (Tex. 1990); *Sax v. Votteler*, 648 S.W.2d 661, 666 (Tex. 1983). In applying this test, we consider both the statute's general purpose and the extent to which the claimant's right to bring a common-law cause of action is affected. *Howell*, 143 S.W.3d at 444; *see Sax*, 648 S.W.2d at 666.

Assuming without deciding that Leonard had a cognizable common-law cause of action restricted by the vexatious litigant statute, these restrictions are not unreasonable or arbitrary when balanced against the purpose and basis of the statute. The purpose of chapter eleven is to restrict frivolous and vexatious litigation. *See Devoll v. State*, 155 S.W.3d 498, 501 (Tex. App.—San Antonio 2004, no pet.) (statute "provides a framework for courts and attorneys to curb vexatious litigation"). It does not authorize courts to act arbitrarily, but permits them to restrict a plaintiff's access to the courts only after first making specific findings that the plaintiff is a vexatious litigant based on factors that are closely tied to the likelihood that the incident litigation is frivolous. *See* Tex. Civ. Prac. & Rem. Code Ann. § 11.054; *Liptak*, 2002 U.S. Dist. LEXIS 940, at *12-13. Although Leonard was found to be a vexatious litigant, chapter 11 and the trial court's order did not categorically bar him from prosecuting his lawsuit, but merely required him to post security to cover appellees' anticipated expenses to defend what the circumstances would reasonably suggest is a

8

frivolous lawsuit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 11.055.[4]  Additionally, the prefiling order does not preclude Leonard from filing new lawsuits; he is merely required to obtain permission from the local administrative judge before filing. *See id*. §§ 11.101, .102.  The restrictions are not unreasonable when balanced with the significant costs of defending Leonard's likely frivolous lawsuits in the future.

Moreover, the statute does not discriminate against *pro se* litigants or "the Davids who sue Goliaths."  Leonard complains that because only *pro se* litigants, and not other individuals such as attorneys are subjected to the vexatious litigant statute, his equal protection rights were violated.  An equal protection claim is not limited to members of a large class, but can be brought by a "class of one," where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Allegheny Pittsburgh Coal Co. v. County Commission of Webster County*, 488 U.S. 336, 345-46 (1989).  "'The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Olech*, 528 U.S. at 564 (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923) (*quoting Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352 (1918)).  Assuming without deciding that Leonard could bring an equal protection claim because he is within a class of *pro se* litigants, or in

---

[4]  Leonard acknowledges in his brief that the statute protects defendants by requiring plaintiffs to furnish security for defendants' expenses.

9

a class by himself, we find that the statute does not implicate his constitutional right to equal protection. Attorneys are subject to sanctions in various forms, including monetary sanctions pursuant to rule 13. *See* Tex. R. Civ. P. 13. Similarly, *pro se* litigants are subject to chapter 11 of the civil practice and remedies code. Leonard alleges that he was found to be a vexatious litigant and his right to equal protection was violated because unlike appellees, he does not have financial or political resources. To the contrary, the record demonstrates that Leonard was adjudicated a vexatious litigant because the trial court found that he met the statutory requirements under chapter 11 of the civil practice and remedies code. Chapter 11 does not unlawfully discriminate against *pro se* litigants or violate Leonard's constitutional right to equal protection. We overrule Leonard's first and fourth issues.

**Vexatious litigant order**

In Leonard's second issue, he argues that there is insufficient evidence that he filed five lawsuits that were finally determined adversely to him, as required by section 11.054(1), or, alternatively, that he repeatedly relitigated or attempted to relitigate, *pro se*, prior litigation, as required by section 11.054(2). *See* Tex. Civ. Prac. & Rem. Code § 11.054.

Under chapter 11 of the civil practice and remedies code, as previously noted, a trial court "*may* find a plaintiff a vexatious litigant" if certain statutory elements are met. Tex. Civ. Prac. & Rem. Code Ann. § 11.054 (emphasis added). The legislature's use of the term "may" denotes that the court has discretion, once it has made the required statutory findings, to declare a party a vexatious litigant. *See Devoll*, 155 S.W.3d at 502 (reviewing chapter eleven issues under abuse of discretion standard); *see also* Tex. Gov't Code Ann. § 311.016 (West 2005) ("may" creates

discretionary authority or grants permission or a power"); *cf. Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) (declaratory judgment act gives trial court discretion in ultimate decision of whether to award attorney fees). Accordingly, we review the trial court's ultimate determination that Leonard is a vexatious litigant under an abuse of discretion standard. *See Devoll*, 155 S.W.3d at 502. It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. *See Bocquet*, 972 S.W.2d at 20.

However, because a trial court may exercise its discretion to declare a party a vexatious litigant only if it first makes prescribed statutory evidentiary findings, we also review the trial court's subsidiary findings under chapter 11 for legal and factual sufficiency. *Cf. Bocquet*, 972 S.W.2d at 21 (addressing analogous issue under declaratory judgment act); Tex. Civ. Prac. & Rem. Code Ann. § 11.054. Leonard attacks only this aspect of the trial court's finding that he was a vexatious litigant. In reviewing a legal sufficiency challenge, the no-evidence challenge fails if there is more than a scintilla of evidence to support the finding. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Tempest Broadcasting Corp. v. Imlay*, 150 S.W.3d 861, 868 (Tex. App.—Houston [14th Dist.] 2004, no pet.). In reviewing a factual sufficiency challenge, we set aside the trial court's decision only if its ruling is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Imlay*, 150 S.W.3d at 868.

As detailed in the background section, in the seven-year period immediately preceding appellees' April 14, 2003 motion, Leonard has commenced, prosecuted, and maintained in *propria persona* at least five litigations, other than in a small claims court, that have been finally determined adversely to him. Although Leonard argues that one lawsuit should not be included as one of five

11

litigations that was finally determined adverse to his interests because it was an election contest, we disagree. A review of Leonard's pleadings in that case, a certified copy of which was attached to appellees' motion, reveals that he requested a declaration that the referendum authorizing construction of a new arena be declared void. In any event, the statute only excludes litigation filed in small claims court, not election contests filed in a district court.[5] *See* Tex. Civ. Prac. & Rem. Code Ann. § 11.054(a) (West 2002). Certified copies of the pleadings and orders were attached to appellees' motion to declare Leonard a vexatious litigant. The five lawsuits are the following cause numbers: (1) 98-09828, dismissed by the district court for lack of subject-matter jurisdiction and affirmed on appeal by this Court; (2) GN0-00717, dismissed for lack of subject-matter jurisdiction; (3) GN001516, dismissed by the district court for lack of subject-matter jurisdiction and affirmed on appeal by this Court; (4) 00-12-07633-CV, dismissed by the district court for lack of subject-matter jurisdiction and affirmed on appeal by the Beaumont Court of Appeals; and (5) GN201013, dismissed by the district court for lack of subject-matter jurisdiction and dismissed for want of jurisdiction by this Court on appeal. After filing these five suits, all of which were dismissed on jurisdictional grounds and finally determined adverse to him, Leonard filed the two underlying suits in this case on the very same grounds, as he admits in his petitions. There is more than a scintilla of evidence to support the finding that Leonard met the requirements of section 11.054(1), and that finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We hold that there was factually and legally sufficient evidence that appellees met their

---

[5] Furthermore, because the "election lawsuit" was properly included, Leonard's due process rights, if any, were not "violated by the trial court's not timely ruling on [his] motion not to count one of the lawsuits."

burden of proof and that the trial court did not abuse its discretion.[6] *See id*. § 11.054(a)(1).  We

overrule Leonard's second issue.

**No reasonable probability that Leonard would prevail**

In his third issue, Leonard argues that appellees failed to show there was no

reasonable probability that he would prevail in this lawsuit.  We disagree.  Again, Leonard admitted

in his pleadings that this lawsuit contains the "same request for relief has been included in one

lawsuit or another continuously from August 31, 1998 through January 27, 2003."  With the

knowledge that each of these previous lawsuits has been dismissed on jurisdictional grounds, that

appellees are generally entitled to sovereign immunity, and that the bonds are generally incontestible

at this point, Leonard filed the same pleading again.[7]  Appellees met their burden of showing that

there was no reasonable probability that Leonard would prevail.  *See id*. § 11.054.  We overrule

Leonard's third issue.

**Limitation on oral argument time**

In his fifth issue, Leonard complains that the trial court violated his right to due

process by limiting his time to present oral argument at the hearing on his motion for extension of

---

[6] We do not reach the issue of whether appellees met their burden under another section of the statute.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 11.054(2) (West 2002).

[7] The bonds are "valid and incontestible in a court or other form and are binding obligations for all purposes according to their terms:  (1) after the public security is approved by the attorney general and registered by the comptroller; and (2) on issuance of the public security."  Tex. Gov't Code Ann. § 1202.006 (West 2000).  Appellees argue that, under this section, Leonard's claims are moot.  Because the vexatious litigant finding will affect Leonard in the future, we address the merits of this issue.

time to furnish security and appellees' motion to dismiss.  Both motions were heard on June 19, 2003.  The trial court has wide discretion in fixing the time allowed for oral argument and granting motions for an extension of time.  *See Aultman v. Dallas Ry. & Terminal Co.*, 260 S.W.2d 596, 600 (Tex. 1953); *Siddiqui v. Yellow Freight Sys., Inc.*, No. 03-98-00517-CV, 2000 Tex. App. LEXIS 6568, at *20-21 (Tex. App.—Austin 2000, pet. denied) (not designated for publication); *see also Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 685 (Tex. 2002).  In his motion for extension of time, Leonard argued that he could not afford to furnish the security and would "be too busy challenging the order to furnish the security to raise money soon."  However, the trial court allowed Leonard to present oral argument that ultimately constituted six pages of the transcript.  We hold that, under the circumstances presented in this case, the trial court did not abuse its discretion by limiting the time for oral argument or denying the motion for extension of time for furnish the security.  We overrule Leonard's fifth issue.

**Dismissal with prejudice**

In his sixth issue, Leonard argues that his suit should not have been dismissed with prejudice.  However, the error in dismissing a case with prejudice cannot be raised for the first time on appeal and must be presented to the trial court.  *See Bird v. Kornman*, 152 S.W.3d 154, 161 (Tex. App.—Dallas 2004, no pet.); *Andrews v. ABJ Adjusters, Inc.*, 800 S.W.2d 567, 568-69 (Tex. App.—Houston [14th Dist.] 1990, writ denied).  To complain about an error in the judgment rendered, Leonard was required to present the error to the trial court in a timely post-judgment motion such as a motion to alter or correct the judgment or a motion for new trial.  *See Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 816 (Tex. App.—Dallas 1999, no

pet.). The final judgment dismissing Leonard's claims with prejudice was signed June 19, 2003. On July 23, 2003, Leonard filed a First Supplemental Motion for New Hearing, arguing for the first time that the case should have been dismissed without prejudice.[8] The supplemental motion, however, was not timely filed within thirty days of the judgment and therefore cannot be considered. *See* Tex. R. Civ. P. 329b; *Bank of Tex., N.A. v. Mexia*, 135 S.W.3d 356, 359 (Tex. App.—Dallas 2004, pet. denied). Although Leonard appears *pro se*, he must comply with the relevant rules of procedural and substantive law. *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975); *Strange v. Continental Cas. Co.*, 126 S.W.3d 676, 677-78 (Tex. App.—Dallas 2004, pet. denied). Because the issue was not timely presented to the trial court, it was waived. We overrule Leonard's sixth issue.

## CONCLUSION

Having overruled all of Leonard's issues, we affirm the orders of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: July 21, 2005

---

[8] Leonard's original motion for new trial was filed in May 2003 in response to the vexatious litigant order, a month before the trial court dismissed his claims with prejudice after Leonard did not furnish the required security.

15