# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00789-CV

**Alphonso Crutch Life Support Center, Appellant**

**v.**

**Michael L. Williams, Commissioner of Education; Holland Timmons,
Designee of the Commissioner; and the Texas Education Agency, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. D-1-GN-13-002830, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Alphonso Crutch Life Support Center (Crutch) appeals the trial court's order granting the plea to the jurisdiction of appellees Michael L. Williams, Commissioner of Education; Holland Timmons, the designee of the Commissioner; and the Texas Education Agency (TEA) and dismissing Crutch's claims against appellees. Crutch contends that the trial court erred in granting the plea and dismissing its claims, which challenge the Commissioner's order denying the renewal of Crutch's charter to operate an open-enrollment charter school. For the following reasons, we affirm the trial court's order.

## BACKGROUND

In 1998, a contract for an open-enrollment charter school was executed between Crutch, a non-profit organization, and the State Board of Education. *See* Tex. Educ. Code § 12.101

(authorizing State Board of Education to grant charters for open-enrollment charter schools to, among others, nonprofit entities).[1] Crutch thereafter began operating an open-enrollment charter school in Houston, Texas, serving primarily at-risk students and as an alternative to alternative schools. After an audit in 2004, the TEA determined that Crutch had over reported its attendance and began withholding state funds from Crutch to recover overallocated state funds. *See Scott v. Alphonso Crutch Life Support Ctr.*, 392 S.W.3d 132, 135 (Tex. App.—Austin 2009, pet. denied) (*Crutch I*); *see also* Tex. Educ. Code §§ 42.101 (stating formula for allotment of state funds based in part on attendance), .258(a) (requiring TEA to recover overallocated state funds either by requesting and obtaining refund or by withholding from subsequent allocations of state funds).

Crutch filed suit against the Commissioner in 2004, asserting statutory and constitutional violations based on the withholding of state funds for the 2003–2004 school year.[2] *See Crutch I*, 392 S.W.3d at 135–36. Crutch did not dispute that there was a mistake in its reporting but argued that the amount of funds attributable to the overallocation was significantly lower than the amount that TEA was seeking to recover. *Id.* at 135. Crutch also filed a subsequent suit against the Commissioner, asserting similar statutory and constitutional violations concerning the

---

[1] Citations to the Texas Education Code and to TEA's rules are to the versions of the statutes and rules in effect during the administrative proceeding in this case unless otherwise stated.

[2] Crutch sought a declaration that "the Commissioner's actions violated state law—including chapter 39 and section 42.258 of the education code—by not providing a 'due process hearing,' or in the alternative, that the statutes are unconstitutional for not providing a right to a hearing" as to the overallocation decision. *See Scott v. Alphonso Crutch Life Support Ctr.*, 392 S.W.3d 132, 135–36 (Tex. App.—Austin 2009, pet. denied) (*Crutch I*). Crutch also claimed that "TEA's rules, policies, and procedures for funding, auditing, and investigating Texas charter schools are unconstitutional." *Id*. at 136.

2

overallocation decision attributable to school years subsequent to the 2003–2004 school year.[3]
*See Scott v. Alphonso Crutch LSC Charter Sch., Inc.*, 392 S.W.3d 165, 168 (Tex. App.—Austin 2010, pet. denied) (*Crutch II*).

Both of these suits were the subject of interlocutory appeals by the Commissioner from orders denying the Commissioner's pleas to the jurisdiction. In *Crutch I*, this Court concluded that "sovereign immunity [was] generally inapplicable to the types of claims asserted by [Crutch]" and affirmed the trial court's order. 392 S.W.3d at 137, 141. In *Crutch II*, this Court affirmed the trial court's order with respect to Crutch's ultra vires and equal protection claims but reversed the order with respect to Crutch's remaining constitutional claims, including its due process claim, and dismissed those claims for lack of jurisdiction. 392 S.W.3d at 174. Focusing on Crutch's "contingent" interest in state funding, we concluded that Crutch did not have a "vested right" in those funds and, therefore, that Crutch's pleadings affirmatively negated the existence of jurisdiction over Crutch's due process and takings claims. *Id.* at 171. But we concluded that the Commissioner failed to challenge Crutch's equal protection claim in his plea and that, because the pleadings did not affirmatively negate or demonstrate the trial court's jurisdiction to hear Crutch's ultra vires claims, Crutch should have the opportunity to amend its pleadings on remand. *Id.* at 171, 174. The

---

[3] Crutch sought declarations based on its allegations that the Commissioner's actions concerning the overallocated state funds that Crutch allegedly received violated state law and provisions of the Texas Constitution, including the taking of property, due course of law, and equal protection. *See Scott v. Alphonso Crutch LSC Charter Sch., Inc.*, 392 S.W.3d 165, 168 (Tex. App.—Austin 2010, pet. denied) (*Crutch II*).

3

Texas Supreme Court denied the Commissioner's petitions for review in both cases in November 2012.[4]

The dispute in this case concerns the Commissioner's decision to deny renewal of Crutch's charter after Crutch had stopped operating its charter school for several years. The Commissioner notified Crutch in 2011 that he intended to deny renewal of Crutch's charter. The listed grounds for denying renewal were that Crutch had: (i) failed to maintain its non-profit status, (ii) failed to file annual audit reports from 2007 to 2010, (iii) received four consecutive academically unacceptable ratings, and (iv) failed to file a dormancy amendment with TEA after it ceased operations. *See* Tex. Educ. Code § 12.115 (listing grounds on which Commissioner may deny renewal of charter, including "committ[ing] a material violation of the charter" and "fail[ing] to satisfy generally accepted accounting standards of fiscal management," and requiring action by Commissioner to be based on "best interest of the school's students, the severity of the violation, and any previous violation the school has committed"); *see also id.* §§ 12.102(3) (making retaining authority to operate charter school "contingent on satisfactory student performance as provided by charter in accordance with Section 12.111"), .111 (describing required content of charter).

In response, Crutch requested a hearing, and the matter was referred to the State Office of Administrative Hearings (SOAH). *See id.* § 12.116(b) (requiring commissioner to adopt procedure for, among other actions, denying renewal that includes "an opportunity for a hearing to the charter holder and to parents and guardians of students in the school"); 19 Tex. Admin. Code

---

[4] After remand to the trial court, the cases were consolidated and tried to the bench. The trial court signed a final judgment on July 10, 2015, in favor of the Commissioner. Crutch's appeal from that judgment is pending before this Court and has been assigned case number 03-15-00509-CV.

§§ 100.1021 (Tex. Educ. Agency, Adverse Action on an Open-Enrollment Charter), .1022 (Standards for Adverse Action on an Open-Enrollment Charter).[5] TEA filed a motion for partial summary disposition in the administrative proceeding. The administrative law judges granted TEA's motion, concluding that there were no genuine issues of material fact about the four factual allegations that formed the bases for denying renewal. *See* 1 Tex. Admin. Code § 155.505(a) (State Office of Adm. Hearings, Disposition of Case) (addressing summary disposition).

Although Crutch requested that the hearing be held in Houston, the hearing was held in Austin in December 2012. *See* Tex. Educ. Code § 12.116(b) ("A hearing under this subsection must be held at the facility at which the program is operated."). The ALJs limited the scope of the hearing to admitting evidence and ruling on mitigating and aggravating factors and affirmative defenses relevant to the grounds for non-renewal decided by partial summary disposition. *See* 19 Tex. Admin. Code §§ 100.1021, .1022. At the hearing, Crutch did not dispute that it had not complied with applicable standards or that it had ceased operating its school by 2009. Crutch primarily urged and presented evidence to support its position that a mitigating factor existed—the allegedly improper withholding of state funds as a result of the overallocation issues—to excuse its non-compliance with applicable standards.

On May 15, 2013, the ALJs issued their proposal for decision. They addressed the four grounds for non-renewal separately and concluded that the Commissioner was required to deny the renewal of Crutch's open-enrollment charter contract. On June 19, 2013, Crutch filed an

---

[5] Section 100.1022 was amended in 2012 during the course of the administrative proceeding. *See* 35 Tex. Reg. 7213 (2010) (pre-2012 version of rule); *see also* 37 Tex. Reg. 4157 (2012) (proposed 2012 amendments), 7107 (adopted 2012 amendments, effective Sept. 12, 2012).

unopposed motion for additional time to file exceptions to the proposal for decision, but the ALJs responded that they were without jurisdiction to consider the motion because it was not timely. *See* 1 Tex. Admin. Code § 155.507 (Proposal for Decision) (requiring exceptions to be filed within 15 days after date of service of proposal for decision unless "referring agency's rules apply by statute"); 19 Tex. Admin. Code §§ 100.1021(f) (requiring exceptions to be filed within 30 days of date of proposal for decision), 157.1059(b) (Filing of Exceptions and Replies to Proposal for Decision) (same). The Commissioner appointed Holland Timmins as his designee on July 17, 2013, and the designee adopted the proposal for decision and issued an order denying the renewal of Crutch's open-enrollment charter contract on the following day.

Crutch thereafter filed suit against appellees in August 2013, seeking injunctive and declaratory relief. Its amended petition, filed a few days after its original petition, lists the following causes of action: (i) violation of due process and due course of law as guaranteed by the Texas Constitution, *see* Tex. Const. art. I, § 19; (ii) violation of the open courts provision of the Texas Constitution, *see id.* § 13; (iii) violation of the equal protection clause of the Texas Constitution, *see id*. §§ 3, 3a; (iv) violations of state laws, and (v) "judicial review of the decision of the Commissioner's Designee."

Appellees filed a plea to the jurisdiction in September 2013, challenging the trial court's jurisdiction over Crutch's suit based on its pleadings and undisputed facts. Appellees contended that the trial court did not have jurisdiction to review the charter's non-renewal, the open courts provision in the Texas Constitution did not apply to the Commissioner's decision not to renew the charter, Crutch had failed to plead facts to establish an equal protection claim, Crutch's due process claims were "simply waived objections to the SOAH hearing" and also failed to identify a

6

protected property interest, and Crutch had failed "to identify any statute violated by an alleged *ultra vires* action."

The trial court held a hearing on appellees' plea to the jurisdiction, and Crutch thereafter filed a response with the trial court's permission. Crutch argued that "the current case seeks review of various actions and processes that have permitted the TEA to remove the School's charter, making an end-run around the ongoing litigation." Among the challenged actions, Crutch argued that the amended version of rule 100.1022 was improperly used during the administrative proceeding. *See* 19 Tex. Admin. Code § 100.1022(g)(2)(C).[6] Crutch also argued that appellees denied Crutch and its students' parents who wished to attend the hearing "an appropriate and convenient venue—Houston" and denied Crutch a fair hearing. Crutch argued that the "summary

---

[6] According to Crutch, the version of rule 100.1022 that the ALJs should have used allowed the ALJs to consider mitigating factors not listed in the rule, *see* 35 Tex. Reg. 7213 (pre-2012 version of rule), and the 2012 amended version limited the mitigating factors to the ones expressly listed in the rule. *See* 37 Tex. Reg. 4157, 7107. Those factors are:

(i)    The charter holder complied successfully with all TEA-imposed corrective actions relating to the problem in a timely manner.

(ii)    The charter holder has no prior history of similar problems.

(iii)    The charter holder has no subsequent history of similar problems and a substantial amount of time has passed since the problem occurred.

(iv)    The charter holder has successfully remedied the problem without TEA intervention and taken effective measures to prevent its recurrence.

*See* 37 Tex. Reg. 4157, 7107; 35 Tex. Reg. 7213. In their proposal for decision, the ALJs only recognized and considered the four mitigating factors that are listed in the rule and concluded that the lack of funding did not fall within any of the four mitigating factors.

disposition rendered the constitutionally guaranteed opportunity to be heard meaningless," that it "ha[d] been treated differently in that other schools—ones that do not have predominately African-American and at risk-populations—were allowed to work through even more serious financial backlogs," and that it had a vested property interest in the continuation of its charter. Crutch attached and incorporated exhibits including pleadings and evidence from the administrative proceeding.

After considering Crutch's response, the trial court granted appellees' plea to the jurisdiction and dismissed Crutch's claims. This appeal followed.

**STANDARD OF REVIEW**

We review a plea questioning the trial court's subject matter jurisdiction de novo. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We focus first on the plaintiff's petition to determine whether the facts that were pled affirmatively demonstrate that subject matter jurisdiction exists. *Id*. We construe the pleadings liberally in favor of the plaintiff. *Id*. If the plaintiff has not affirmatively pleaded facts to support jurisdiction or to negate jurisdiction, the matter is one of pleading sufficiency, and the court should provide the plaintiff with the opportunity to amend its pleadings to cure jurisdictional defects. *Id*. at 226–27.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Id*. at 227; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). When evidence is submitted that implicates the merits of the case, our standard of review generally mirrors the summary judgment standard under Texas Rule of Civil Procedure 166a(c). *Miranda*, 133 S.W.3d at 228; *see also* Tex. R. Civ. P. 166a(c). The burden is on the governmental unit to

present evidence to support its plea. *Miranda*, 133 S.W.3d at 228. If the governmental unit meets this burden, the burden shifts to the plaintiff to show that a disputed material fact exists regarding the jurisdictional issue. *Id.* We take as true all evidence that is favorable to the plaintiff and indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact question will be resolved by the fact-finder. *Id.* at 227–28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, however, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

Sovereign immunity from suit deprives a court of subject matter jurisdiction and is therefore properly asserted in a plea to the jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Miranda*, 133 S.W.3d at 225–26; *see City of Dallas v. Albert*, 354 S.W.3d 368, 374 (Tex. 2011) (noting that "waivers of sovereign immunity or consent to sue governmental entities must generally be found in actions of the Legislature"). "It is well recognized under Texas law that there is no right to judicial review of an administrative order unless a statute provides a right or unless the order adversely affects a vested property right or otherwise violates a constitutional right." *Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000); *see Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011) (considering substance of constitutional claim in reviewing plea to jurisdiction and noting that immunity was retained unless viable claim pleaded).

**DISCUSSION**

In two issues, Crutch contends that the trial court has jurisdiction to review Crutch's challenge to its charter's non-renewal and to determine its rights under state law and addresses the trial court's jurisdiction over its causes of action against appellees. We consider each of Crutch's causes of action in turn.

**Judicial Review**

In its amended petition, Crutch sought "judicial review of the decision of the Commissioner's Designee," contending that no substantial evidence justified the decision, the decision was arbitrary and capricious, and the hearing was an ultra vires proceeding. *See* Tex. Gov't Code §§ 2001.171 (addressing judicial review of final decision in contested case), .174 (describing judicial review of decision in contested case). In their plea to the jurisdiction, appellees argued that the trial court did not have jurisdiction to judicially review the administrative proceeding and the resulting order of non-renewal. We agree.

The applicable statute that creates the procedure for charter non-renewal contains language analogous to language that the Texas Supreme Court has recognized as expressly precluding judicial review. *See Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 199 (Tex. 2004) (noting that express statutory language may foreclose judicial review of administrative decision); *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 599 (Tex. 2001) (concluding that "Legislature has expressly precluded judicial review of the administrative judge's rulings under Chapter 2260" where applicable statute provided that "Subchapter G, Chapter 2001, does not apply to a hearing under this section" ). Subchapter D of

10

Chapter 12 specifically addresses the applicable standards and procedures for open-enrollment charter schools. *See* Tex. Educ. Code §§ 12.101–.135. Section 12.116(c) of Subchapter D provides: "Chapter 2001, Government Code, does not apply to a hearing that is related to a . . . denial of renewal under this subchapter [D]." *Id.* § 12.116(c); *see Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 157–58 (Tex. 2007) (noting that statute that creates rights can place them outside judicial review). Thus, the applicable statute expressly precludes judicial review. *See General Servs. Comm'n*, 39 S.W.3d at 599.

In its reply brief, Crutch relies on section 7.057(d) of the Education Code as a statutory basis for its right to judicial review of the non-renewal order. *See* Tex. Educ. Code § 7.057(d) (authorizing "person aggrieved by an action of the agency or decision of commissioner" to appeal to Travis County District Court). Based on the express language in section 12.116(c), however, we find section 7.057(d) inapplicable to a hearing related to the non-renewal of an open-enrollment charter contract. *See id*. § 12.116(c); *General Servs. Comm'n*, 39 S.W.3d at 599. Thus, we conclude that the trial court correctly granted appellees' plea to the jurisdiction as a matter of law as to Crutch's claims seeking judicial review of the non-renewal order.

**Due Process and Due Course of Law Claims**

In its amended petition, Crutch alleged that appellees' actions as set forth in its petition violated Crutch's due process and due course of law rights under the Texas Constitution. *See* Tex. Const. art. I, § 19. Crutch's pleadings included factual assertions that an incorrect standard for mitigation was applied in the administrative proceeding, the Commissioner improperly delegated the decision to a designee, summary disposition was improperly used, limits on witnesses and

11

evidence at the hearing were improper, and the location of the hearing should have been in Houston, not Austin. In their plea to the jurisdiction, appellees urged that Crutch's due process and due course of law claims were "simply waived objections to the SOAH hearing," that Crutch failed to identify a protected property interest, and that Crutch failed to take advantage of the process that was afforded to it.

Due process concerns arise "when the state or its agents deprive a person of a protected liberty or property interest." *McMaster v. Public Util. Comm'n*, No. 03-11-00571-CV, 2012 Tex. App. LEXIS 7502, at *21 (Tex. App.—Austin Aug. 31, 2012, no pet.) (mem. op.); *see* Tex. Const. art. I, § 19. To bring a valid due process claim, a plaintiff must assert a protected liberty or property interest. *See Concerned Cmty. Involved Dev., Inc. v. City of Houston*, 209 S.W.3d 666, 671 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("The Due Process Clause is only activated when there is some substantial liberty or property interest which is deserving of procedural protections."). *"*If a constitutionally protected property interest is at stake, we must then determine what process is due to sufficiently protect that interest." *McMaster*, 2012 Tex. App. LEXIS 7502, at *20–21; *see University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). "What process is due is measured by a flexible standard that depends on the practical requirements of the circumstances." *Than*, 901 S.W.2d at 930. "[T]he ultimate test of due process of law in an administrative hearing is the presence of rudiments of fair play long known to our law." *State v. Crank*, 666 S.W.2d 91, 94 (Tex. 1984).

On appeal, Crutch argues that TEA's administrative proceeding violated Crutch's procedural and substantive due process rights and that it has a vested property right in the continued operation of its charter. According to Crutch, the administrative proceeding was a "mere sham"

because TEA did not consider whether its own actions, including the withholding of funds, caused Crutch's alleged material violations that formed the bases of the non-renewal decision. Crutch also raises similar complaints concerning the administrative proceeding as it did in its amended petition, such as the venue of the hearing, and disputes that it waived its constitutional rights by its untimely filing of objections to the proposal for decision.[7] Crutch argues that the trial court "has the inherent authority to review administrative agency action under the current circumstances."

As support for its arguments, Crutch cites the constitutional obligation of public schools to provide quality education and the separation of powers doctrine. *See* Tex. Const. art. II, § 1 (requiring separation of powers among three branches of government), art. VII, § 1 (requiring legislature "to establish and make suitable provision for the support and maintenance of an efficient system of public free schools"); Tex. Educ. Code § 4.001 (describing public education mission and objectives); *Edgewood Ind. Sch. Dist. v. Kirby*, 777 S.W.2d 391, 393–94 (Tex. 1989) (discussing court's role in "measur[ing] the constitutionality of the legislature's actions" under article VII, section 1 of Texas Constitution).

To the extent that Crutch has a property right or interest in its charter that is constitutionally protected, however, we conclude that the evidence established that Crutch has not been deprived of the constitutional rights to due process and due course of law concerning the non-renewal decision. *See Than*, 901 S.W.2d at 930; *Crank*, 666 S.W.2d at 94; *see also Favaloro v. Commission for Lawyer Discipline*, 994 S.W.2d 815, 822 (Tex. App.—Dallas 1999, pet. struck) ("While the license to practice is a property right, and a valuable one at that, it is not such a vested

---

[7] Crutch does not dispute that its exceptions to the proposal for decision were not timely. It states in its brief: "After the proposal was issued, Crutch missed its deadline for objections."

13

right, in the constitutional sense, that it may not be revoked for good cause, and such revocation is not a taking of property without due process of law." (citation omitted)). It is undisputed that Crutch had notice of the grounds for non-renewal and was represented by counsel and participated in the hearing that was held before impartial fact finders—the ALJs at SOAH—but that Crutch failed to timely file exceptions to the proposal for decision. By failing to file exceptions in a timely manner, Crutch failed to utilize the full extent of process available to it.

Considering the undisputed evidence of notice, hearing, and the further process that was available to Crutch, we conclude that Crutch's pleadings and the undisputed evidence established as a matter of law that the trial court did not have jurisdiction over Crutch's due process and due course of law claims and, therefore, that the trial court correctly granted appellees' plea to the jurisdiction as to these claims. *See Miranda*, 133 S.W.3d at 228.

**Equal Protection Claim**

In their plea to the jurisdiction, appellees contended that Crutch's equal protection claim should be dismissed because Crutch failed to plead facts necessary to establish this claim. They argued that Crutch pled the exact same equal protection claim as it did in *Crutch II*. *See* 392 S.W.3d at 171. Similar to the pleadings in *Crutch II*, Crutch alleged that appellees' actions based on race as set forth in its petition have denied it the right to equal protection of the laws as guaranteed by the Texas Constitution. *See* Tex. Const. art. I, §3, 3a.[8] Crutch's alleged facts in its

---

[8] In its amended petition, Crutch also cited chapter 106 of the Texas Civil Practice and Remedies Code as support for its equal protection claim. *See* Tex. Civ. Prac. & Rem. Code § 106.001(a) (prohibiting officer or employee of state from taking specified actions for discriminatory reason); *Mauldin v. Texas State Bd. of Plumbing Exam'rs*, 94 S.W.3d 867, 871–72 (Tex. App.—Austin 2002, no pet.) (discussing statutory right to be free of official discrimination provided

14

amended petition to support this claim include that it "was never given a chance to respond" to the 2004 audit "[u]nlike other schools," and that it "has been treated differently" from other schools that were "permitted to operate while financial or other issues were permitted to be resolved."

"To assert an equal protection claim, the plaintiff must establish that: (1) he or she was treated differently than other similarly situated parties; and (2) he or she was treated differently without a reasonable basis." *See Price v. Texas Alcoholic Beverage Comm'n*, No. 01-12-01164-CV, 2014 Tex. App. LEXIS 7495, at *11 (Tex. App.—Houston [1st Dist.] July 10, 2014, pet. denied) (mem. op.). "The purpose of the equal protection clause is to secure persons against intentional and arbitrary discrimination." *City of Dallas v. Jones*, 331 S.W.3d 781, 787 (Tex. App.—Dallas 2010, pet. dism'd) (citing *Leonard v. Abbott*, 171 S.W.3d 451, 458 (Tex. App.—Austin 2005, pet. denied)). "It is critical, however, that the plaintiff allege he is being treated differently from those whose situation is directly comparable in all material respects." *Id*.

On appeal, Crutch describes its equal protection claim to be that other "similarly-situated charter schools that were not owned and operated by African-Americans" were in a similar position to Crutch because "they had been overallocated significant funds" and TEA "worked with those schools to allow them to continue to receive sufficient funding to continue operating" and "withheld funding to recoup those funds along a reasonable timeline." But, according to Crutch, TEA treated it differently and, as a result, its "standards eventually slipped, after years of operating without sufficient funding, and the Commissioner used these slipping standards as a

---

in section 106.001 in context of equal protection claim). Crutch, however, does not argue on appeal that this section provides a basis for the trial court's jurisdiction and, thus, we do not consider it. *See* Tex. R. App. P. 38.1(i).

basis for nonrenewing the charter." Crutch contends that TEA held it to "a different standard because it was owned by African-Americans and served a primarily minority, underprivileged student population."⁹

The evidence was undisputed, however, that Crutch had ceased operating its charter school by 2009 and that it had failed to comply with filing and performance requirements. Crutch has not alleged or identified a similarly situated school that was granted renewal of its charter contract despite ceasing operating as a school and failing to comply with required filings and other performance standards. *See Jones*, 331 S.W.3d at 787. At its core, Crutch's equal-protection claim stems from the alleged consequences of the overallocation decisions and resulting withholding of state funds, which is the subject of the related but pending suits. *See Crutch II*, 392 S.W.3d at 174 (remanding case to trial court); *Crutch I*, 392 S.W.3d at 141 (affirming trial court's denial of plea to jurisdiction). Considering Crutch's pleadings and the undisputed evidence, we conclude that the trial court correctly granted appellees' plea to the jurisdiction in this litigation as a matter of law as to Crutch's equal protection claim. *See Miranda*, 133 S.W.3d at 228.

**Ultra Vires Claims**

In its amended petition, Crutch alleged that appellees' actions as set forth in the petition violated state law. As previously stated, Crutch's factual assertions in its petition focused on the use of summary disposition and a designee by the Commissioner, the location of the

---

⁹ In its response to appellees' plea to the jurisdiction, Crutch similarly described its equal protection claim as follows: "To wit: Crutch has been treated differently in that other schools—ones that do not have predominately African-American and at-risk populations—were allowed to work through even more serious financial backlogs."

16

hearing in Austin, and application of the wrong standard on mitigation during the administrative proceeding.  In their plea to the jurisdiction, appellees contended that Crutch failed "to identify any statute violated by an alleged *ultra vires* action."

"[S]overeign immunity does not prohibit suits brought to require state officials to comply with statutory or constitutional provisions." *Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69, 76 (Tex. June 26, 2015) (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)).  "But, to fall within this 'ultra vires exception,' a suit must allege that a state official acted without legal authority or failed to perform a purely ministerial act, rather than attack the officer's exercise of discretion." *Id.*; *see also Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) (discussing *Heinrich* and ultra vires actions for prospective relief).  "The governmental entities themselves remain immune from suit, though, because unlawful acts of officials are not acts of the State." *Patel*, 469 S.W.3d at 76  (citing *Heinrich*, 284 S.W.3d at 372–73).

On appeal, Crutch raises similar complaints about the administrative proceeding as it does with its constitutional claims and argues that the non-renewal decision was predicated on TEA's "perpetual violations of the Education Code's mandates that all students receive a quality education."  As support for its ultra vires claims, Crutch argues that it is challenging TEA's interpretation of its statutes and rules and that "TEA violated its own rules in reaching its decision." TEA, however, as a governmental entity retains immunity from Crutch's ultra vires claims. *See Heinrich*, 284 S.W.3d at 372–73.  Further, as to the Commissioner and his designee, sections 12.115 and 12.116 of the Education Code expressly authorize the Commissioner to deny renewal of an open-enrollment charter and to adopt procedures for making this determination.  *See* Tex. Educ. Code §§ 12.115 (authorizing Commissioner, among other actions, to deny renewals), .116 (authorizing

17

Commissioner to adopt procedure for, among other actions, denial of renewal). Because the Education Code expressly authorizes the Commissioner to deny renewal of an open-enrollment charter and to adopt the procedures for doing so, he, through his designee, did not exercise authority beyond his statutorily conferred powers by denying the renewal after a hearing pursuant to the statute and TEA's rules. *See Pharmserv, Inc. v. Texas Health & Human Servs. Comm'n*, No. 03-13-00526-CV, 2015 Tex. App. LEXIS 3452, at *18–19 (Tex. App.—Austin Apr. 9, 2015, no pet.) (mem. op.) (noting that plaintiff was required to allege that state officials, by taking the challenged action, "acted wholly outside their authority" (citing *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519, 528 (Tex. App.—Austin 2002, pet. denied)).

Crutch focuses on the requirement in section 12.116(b) of the Education Code that the hearing be "held at the facility at which the program is operated," *see* Tex. Educ. Code § 12.116(b), and points to evidence that parents and guardians of former or potential students would have participated if the hearing had been in Houston. Crutch's charter school, however, did not have students at the time of the administrative hearing in 2012 as the school had not been operating for several years. Further, complaints about a state actor's failure to comply with all of the "intricacies" of an administrative process generally do not confer jurisdiction on the trial court to consider ultra vires claims. *See Friends of Canyon Lake*, 96 S.W.3d at 528 (noting that "whether the agencies correctly complied with all of the intricacies of the application process cannot be the factor that confers jurisdiction"); *see also Pharmserv*, 2015 Tex. App. LEXIS 3452, at *18–19. In substance, Crutch's ultra vires claims request a substantive review of the administrative proceeding and the subsequent agency order, which review the trial court did not have jurisdiction to undertake. *See* Tex. Educ. Code § 12.116(c); *see Mega Child Care*, 145 S.W.3d at 199; *see also Ferrell*,

18

248 S.W.3d at 158–59 (concluding that trial court did not have jurisdiction to review pension board decision when underlying statute made decision "final and binding").

Considering the undisputed evidence and the statutes that expressly authorize the Commissioner to deny renewal and to adopt procedures for this determination, we conclude that the trial court correctly concluded as a matter of law that it lacked jurisdiction over Crutch's ultra vires claims. *See Miranda*, 133 S.W.3d at 228.

**Open Courts Claim**

In its amended petition, Crutch alleged that, through the actions alleged in its amended petition, appellees "violated the Plaintiff's right to Open Courts guaranteed by the Texas Constitution." *See* Tex. Const. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."); *see In re Dean*, 393 S.W.3d 741, 748 (Tex. 2012) (discussing elements of open courts violation). Crutch also sought a declaration that, to the extent that the non-renewal decision was not appealable, the lack of an appeal violated the open courts provision. In their plea to the jurisdiction, appellees contended that Crutch's claim based on the open courts provision of the Texas Constitution should be dismissed because the decision of the Commissioner, through his designee, to deny renewal was not subject to judicial review.

On appeal, Crutch argues that, by virtue of appellees' improper actions, it "has no forum in which it can raise its actual dispute." It further explains its open courts claim as follows:

> If, then, § 12.116 allows the Commissioner to abuse his discretion by nonrenewing
> the charter for illegal reasons, and then precludes Crutch's ability to have that abuse

19

of discretion reviewed by anyone other than the Commissioner himself, it violates the open-courts doctrine.

*See* Tex. Educ. Code § 12.116. As support for this claim, Crutch cites *Sax v. Votteler*, 648 S.W.2d 661 (Tex. 1983), and 2013 amendments to section 12.116 of the Education Code. *See* Act of May 26, 2013, 83d Leg., R.S., ch. 1140, § 26, 2013 Tex. Gen. Laws 2760, 2772–73. Neither, however, supports the trial court's jurisdiction to consider Crutch's claim based on the open courts provision of the Texas Constitution.

Under the amended version of section 12.116, a decision by the Commissioner to revoke a charter is subject to review by SOAH, but the administrative law judge's decision under that section is "final and may not be appealed." *See id.* Thus, consistent with the prior version of the statute, the amended version does not provide for judicial review of a non-renewal decision. *See Mega Child Care*, 145 S.W.3d at 199. Further, we do not find the statute at issue in *Sax* analogous to the Commissioner's non-renewal decision following an administrative hearing. In that case, the court faced an open courts challenge to a statute of limitations on the ground that it unreasonably denied a minor who was bringing a malpractice claim against her doctor access to the courts. *Sax*, 648 S.W.2d at 663. In that context, the court recognized that the open courts provision "ensures that Texas citizens bringing common law causes of action will not unreasonably be denied access to the courts." *Id*. at 664.

Considering the undisputed evidence and the statutes that expressly authorize the Commissioner to deny renewal of a charter without providing a right to judicial review, we conclude

that the trial court correctly granted appellees' plea to the jurisdiction as to Crutch's claim based on the open courts provision of the Texas Constitution. *See Miranda*, 133 S.W.3d at 228.

**Declaratory Judgment Claims**

On appeal, Crutch urges that the trial court has inherent authority under the Uniform Declaratory Judgments Act to hear and determine whether an agency's action was ultra vires or unconstitutional. *See* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011 (UDJA). "Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority." *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). The UDJA, however, "does not enlarge a trial court's jurisdiction, and a litigant's request for declaratory relief does not alter a suit's underlying nature." *Heinrich*, 284 S.W.3d at 370–01. The underlying nature of Crutch's claims for declaratory relief is its claims based on appellees' alleged ultra vires and constitutional violations. For the reasons stated above as to those claims, we conclude that the trial court did not have jurisdiction over Crutch's UDJA claims.

**Rule Challenge**

On appeal, Crutch also states that, among its causes of action, it is challenging the validity of rule 100.1022 on its face and as it has been applied to Crutch. *See* 19 Tex. Admin. Code § 100.1022. Crutch's pleadings included the following allegations as to that rule: (i) the "rule requiring mandatory non-renewal of a charter contravenes the state law under which its authority is derived," (ii) limiting mitigating factors to the four listed in the rule "runs counter to the rule in effect in this case," and (iii) comments to the amended rule recognized that the requirement to revoke "if

21

the charter holder is found to have failed to achieve minimum performance standards is stricter than the enabling statute." Crutch sought, among other relief, a declaration that the "interpretation of the rule requiring mandatory non-renewal of a charter contravenes the state law under which its authority is derived." *See* Tex. Educ. Code § 12.115 (stating that commissioner "may" deny renewal).

TEA, as a state agency, does not have sovereign immunity from valid rule challenges. *See* Tex. Gov't Code § 2001.038 ("The validity or applicability of a rule . . . may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs . . . a legal right or privilege of the plaintiff. . . . The state agency must be made a party to the action."). But, the substance of Crutch's pleadings attacks the Commissioner's order denying renewal and concerns appellees' specific actions in the administrative proceeding. In this context, we conclude that Crutch has failed to assert a valid rule challenge. *See Trinity Settlement Servs., LLC v. Texas State Secs. Bd*., 417 S.W.3d 494, 502–03 (Tex. App.—Austin 2013, pet. denied) (concluding statements interpreting rule as it applied to individual rights in administrative hearing did not constitute "'rule' invoking the trial court's jurisdiction" under APA); *Friends of Canyon Lake*, 96 S.W.3d at 529 (noting that "section 2001.038 does not confer jurisdiction upon a court to determine whether an administrative agency has complied with the administrative code" but to determine if rule valid and/or applicable and noting that, even if trial court declared the validity or applicability of rule, it could not revive plaintiff's appeal of administrative order); *see also Pharmserv*, 2015 Tex. App. LEXIS 3452, at *23 (rejecting attempt to encompass rule challenge in arguments supporting ultra vires claims based on due process).

## CONCLUSION

For these reasons, we overrule Crutch's issues and affirm the trial court's order granting appellees' pleas to the jurisdiction and dismissing Crutch's claims against appellees.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Affirmed

Filed:   November 30, 2015

23